# Slaughter, &c., v. City of Louisville.

## Goda v. Same.

## Miller v. Same.

APPEALS FROM LOUISVILLE LAW AND EQUITY COURT.

1. BOARD OF TAX COMMISSIONERS — NOTICE OF SITTINGS.—By the act of February 17, 1866, which provided a board of tax commissioners for the city of Louisville, whose duty it was to hear taxpayers' complaints of improper assessment, etc., the board was required to give notice of its sittings by public advertisement; and the publication of this notice was a condition precedent to the city's right to recover *ad valorem* taxes. A newspaper advertisement, signed by the city assessor, he being *ex officio* a member of the board, was not a notice published by the board.

2. SAME.—Although the required notice for the year 1882 was given in due form, yet as the board failed to meet at the time fixed by law, the levy was not valid.

3. SAME.—As the board of commissioners, provided for by the act of

---

\*This case has been pending upon a petition for rehearing; and, for that reason, has not been reported sooner.

Slaughter, &c., v. City of Louisville.  Goda v. Same.  Miller v. Same.

March 29, 1882, never met or organized, the re-assessments of property under that act, if any there were, were invalid.

4. UNAUTHORIZED SITTINGS OF BOARD OF EQUALIZATION.—As the board of equalization provided for by the act of April 8, 1882, whose duty it was to hear appeals, etc., was appointed by the mayor, without the consent and approval of the board of aldermen, and was not appointed until after the time provided by the act, the sittings of this board in November, 1882 and 1883, were without authority, which was fatal to the taxes of 1883 and 1884.  In the absence of a legally appointed board, tax-payers were not required to file any complaint with the assessor as to erroneous assessments.

5. SAME.—Under the act of April 19, 1884, attempting to legalize the action of the mayor in appointing the board, the session of the board, to be legal and valid, should have commenced on the first day of June, and continued until the last day of July.  The board, failing to begin its session on the first day of June, the tax-payer was not required to take notice of a subsequent meeting.

6. TO ENTITLE THE TAX-PAYER TO A HEARING BEFORE THE BOARD OF EQUALIZATION, it was necessary for him to file a petition before the board setting forth his complaint.

7. VALIDITY OF STATUTE CURING DEFECTS IN ASSESSMENTS.—Where assessments are merely defective by reason of some mistake or omission of the officer, such defects may be cured by subsequent legislation.  But where the assessment is void, there is nothing for the Legislature to act upon, and it has no power, except to provide for a re-assessment and its collection.

8. SAME—PLEADING.—Where it is sought to enforce defective assessments, thus attempted to be cured, *facts* must be alleged showing that they were irregular and defective, and not void.  It is not sufficient to allege merely that they were defective.

The curative statute relied upon in these cases, however, does not attempt to validate assessments that were merely defective, but assessments that were "inoperative and void."

9. ASSESSMENT ESSENTIAL TO VALIDITY OF TAX.—It is essential to the validity of *ad valorem* taxation that there should be an assessment.  And the tax-payer is entitled to be heard in fixing the valuation.

10. THE LEGISLATURE HAS NO POWER TO FIX THE VALUATION OF PROPERTY FOR THE PURPOSE OF AD VALOREM TAXATION, as the valuation or assessment of property for that purpose is a ministerial act, and no such power can be exercised by the Legislature, even though it takes as a basis a void assessment which the assessor has attempted to make.

R. W. WOOLLEY, DODD & DODD, LANE & BURNETT FOR APPELLANTS.

Briefs withdrawn.

Vol. 89—8

L. N. DEMBITZ for appellee.

1. Where a penalty is imposed by a tax law, such as forfeiture of the lands, the law should be strictly taken; but where nothing is de-- manded beyond the citizen's fair share of the public burdens, the construction should be liberal. Curative acts, like those of April 25, or May 12, 1884, should be liberally construed, because it is the evi- dent intent of the law-maker to get rid of technicalities, which stood in the way of the full collection of taxes. The same canon will apply to the curative sections of the charter amendment of March 29, 1882, in which this intent is avowed.

This court has lately shown its displeasure at quibbles against municipal taxes (Greer v. City of Covington, 7 Ky. Law Rep.), and has also undertaken to act with some liberality upon a title closely resembling a tax title. (Paul v. Smith, 6 Ky. Law Rep., 532.)

2. The taxes for 1877, 1878 and 1879 were "re-assessed" under the fifth section of the act of March 29, 1882. The assessor exercised his judgment, and the result of his judgment was put into form, which was all that was required to sustain the levies.

By requiring that the board, made up by section 5, should be "in continuous session," it was only intended that it should sit when called on.

3. The Legislature may extend the period of limitation as to a cause of action which is not yet barred by the law in force. Therefore, the extension of time as to the taxes for 1877 and the subsequent years is good.

The fact that the board of "4," under the act of March 29, 1882, has never met is immaterial, for it may meet yet; it may meet at any time, even after judgment and before the tax is paid, and reduce its amount. This act has not been repealed. On the contrary, the cura- tive act of May 12, 1884, undertakes to aid it. Such a provision is sufficient. (Hagar v. Reclamation District, 111 U. S., 701)

A hearing before a board of review is not a constitutional re- quirement. (McMillan v. Anderson, 95 U. S., 42.)

4. Whatever steps the Legislature could have dispensed with originally, it may dispense with by retrospective act, provided the tax-payer is given the opportunities for hearing, for payment before sale, for redemption, &c., afterward, that he is constitutionally entitled to. (People v. Lynch, 51 Cal., 1; Cross v. Milwaukee, 19 Wis.; Tallman v. Janesville, 17 Wis., 71; Smith v. Cleveland, 17 Wis., 556–565.)

5. Under the curative act of April 25, 1884, no judgment can be ren- dered for the newly imposed arrears, until a new board of equaliza- tion has met, and the members of this board must be elected by the board of aldermen of Louisville. Therefore, the act does not violate the rule that local bodies must tax themselves. (Fairfield v. The People, ex rel M'Crea, 94 Ill., 291.)

6. A legislative assessment is not necessarily void. (Evansville R. Co. v Commonwealth, 9 Bush.)

7. The terms of the act have been complied with. The notice given by the board of equalization on the 24th of July, 1884, for the meeting on that day, was sufficient. It was not necessary that the notice should be given by the board in its organized capacity; but even if this was necessary, the board ratified the notice published in the Courier-Journal by spreading it on its minutes, and it became, from that time, a lawful notice. The notices in the Ormsby case (4 Ky. Law Rep., 711) were different from the notice in this case.

The act of February 14, 1866, says: "The *board* shall cause to be published." The new law says: "They shall give notice." Where a provision in a statute has received a judicial construction, and is afterwards inserted in another statute, the same construction will be given to it. But if the clause *varies*, it shows a different intent on the part of the Legislature. (Blackwell's Rules of Construction; 1 Pick., 154-5; Mass., 462.)

The board was both organized and sworn when it gave validity to the notice at the board meeting. But even if the giving of the notice was complete when it was published in the Courier-Journal, and the subsequent action of the board could not aid it, the fact that the members of the board were not sworn when they gave the notice did not render it void. There is no reason for withdrawing this case from the general rule that the acts of *de facto* officers are valid. (People v. Collins, 7 Johnson, 549; Rice v. Commonwealth, 3 Bush, 14; Rodman v. Harcourt, &c., 4 B. M., 224; Patterson v. Miller, 2 Met., 496; Morgan v. Vance, 4 Bush, 325; Horn v. Lockhart, 17 Wall., 570; Cooley on Taxation, 190, 191; Blackwell on Tax Titles, pp. 98, 99; Tucker v. Aikin, 7 N. H., 107-140; Smith v. Messer, 17 N. H., 429; Hale v. Cushing, 2 Greenleaf, 218; Donner v. Woodbury, 19 Vt., 329; Spear v. Ditty, 8 Vt., 419; Allen v. Armstrong, 16 Iowa, 108; Washington Co. v. Miller, 14 Iowa, 584; 38 Miss., 692; Renkendorf v. Taylor, 4 Pet., 212.)

8. It is no objection to the assessment books for 1883 and 1884 that they were not signed. A signature is no part of the form prescribed by the statute, and a signature is necessary only where the statute requires it. (Lacy v. Davis, 4 Mich.) A signature of municipal records in general is not necessary. (Slaughter v. Hudmon, 70 Ala., 546.) And an unsigned private writing is as binding as one that is signed. (Farmer v. Gregory & Stagg, 78 Ky., 475.)

9. The omission of some articles of personalty in the levy ordinances for 1883 and 1884 does not avoid them. Nor did the attempt of the general council to exempt residuary from some of the rates avoid the levy. At all events, the tax bills for 1883 and 1884 on lands and improvements would be good for the 72 and 70 cents imposed on residuary. (Kersey v. Supervisors of Milwaukee, 16 Wis.)

Slaughter, &c., v. City of Louisville.   Goda v. Same.   Miller v. Same.

If the body of an act is *legal*, and a saving clause or exception is *illegal*, the exception should be rejected. (Rash v. Holloway, 6 Ky. Law Rep.)

If an illegal exemption does not increase the amount which others are taxed, they are not injured. If it does, their remedy is by mandamus to compel the city authorities to assess all the property liable to taxation. At all events, the omission should not have the effect to vitiate the whole tax list for the year. (Dillon on Municipal Corporations, vol. 2, secs. 776, 779; People v. McCreeny, 37 Cal., 243; Dunham v. Chicago, 55 Ill., 357; Schofield v. Watkins, 22 Ill., 66; Merritt v. Farris, 22 Ill., 303.

10. The assessments for the years 1883 and 1884 were good from the start. The non-existence of a lawful equalization board did not excuse assessed property-owners from filing their written complaints. The boards appointed by the mayor were at least good *de facto* boards in November, 1882 and November 1883 (for, 1883 and 1884), and the ordinary rules, as to the validity of all acts of *de facto* officers, apply.

11. But if the original assessments and bills for 1883 and 1884 were not good, there is no trouble under the curative act of May 1, 1884.

It is no objection to the proceedings under this act that only two members of the board were present at the first sitting. Two members were a quorum, which was all that was necessary in order to begin business. (Wright v. Commonwealth, Am. and Eng. Corporation Cases, vol. 11, p. 609.)

12. Section 18 of the act of April 8, 1884, which provides that all courts in the county of Jefferson shall take judicial notice of the passage and contents of each ordinance of the city of Louisville, is not in violation of the Constitution of Kentucky. There is nothing in the Constitution requiring that the same rules of evidence should prevail in all courts of the Commonwealth as to judicial notice and pleading of ordinances. (March v. Commonwealth, 12 B. M., 28; Curboy v. Iowa City, 2 Iowa, 95; Preston v. Roberts, 12 Bush; Dillon on Mun. Corp., section 413; 24 N. J. L., 142, 145.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

As these cases involve the same questions, they, by agreement, are to be heard together.

The appellee, by actions in the Louisville Law and Equity Court, sought to subject real estate, situated in the city of Louisville, belonging to appellants, to the payment of *ad valorem* taxes, alleged to have been

assessed against the same by the appellee for the years 1877 to 1885, inclusive.   The appellants resisted the appellee's right to recover these taxes, upon the ground that there was no assessment for any one of said years, and upon the ground of errors committtted in the election, organization and official transactions of the various boards provided by law for the hearing of appeals from the alleged assessments.

By an act approved February 17, 1866, a board of tax commissioners was provided for, whose duty it was to hear the tax-payers' complaints of improper assessments, &c.   This board was required to give notice of its sittings by public advertisement.

In the case of Ormsby v. The City of Louisville, 79 Ky., 197, it was held that the publication of this notice was a condition precedent to the city's right to collect *ad valorem* taxes.

In the case of Dumesnil v. The City of Louisville, decided by this court in 1882, 4 Ky. Law Rep., 14, it was held that a newspaper advertisement, signed by the city assessor, he being *ex officio* a member of the board, was not a notice published by the board.

The appellee fails to show publication of notice in any other way.   It, therefore, fails to manifest a right to recover of the appellant any of the taxes that might have been assessed prior to 1882.

The notice for 1882 appears to have been given in due form; but the board failed to meet at the time fixed by law for its meeting; therefore, the levy for 1882 was invalidated.

By an act approved March 29, 1882, the city assessor was directed to re-assess any real estate upon which

taxes had not been paid, and to assess all property not previously assessed.

This act also provides a board of commissioners, consisting of the auditor, treasurer and chairman of the committee on assessments, whose duty it shall be to be in continuous session for the purpose of hearing appeals, &c. This board never met or organized. According to the decisions of this court, the failure of said board to organize and meet, the re-assessments, if any there were, fell to the ground.

By an act approved April 8, 1882, it was made the duty of the assessor to re-assess any real estate that had been erroneously assessed. This re-assessment was required to be made as of the first day of September in each year. But the assessor was required to give written notice by mail to each person whose property he proposed to assess before making the assessment. It is not contended that any re-assessment, as required by this act, was made or attempted to be made. Therefore, the appellee still shows no right to collect taxes from the appellants up to and including 1882.

The act of April 8, 1882, also regulated the assessments made after its date. These assessments were required to be made on the first day of September, 1882, and annually thereafter. The assessment books were required to remain open in the office of the assessor from the 15th to the 30th day of November in each year, during which time any tax-payer, dissatisfied with his assessment, might file his complaint with the assessor.

This act abolished the board of commissioners, and, in its stead, provided for the appointment of a board of

·equalization, whose duty it was to ·hear appeals, &c. This board was to be appointed by the mayor, by and with the consent of the board of aldermen.

The act provided for the appointment of this board in September, 1882; but it was not appointed until November of that year, and the appointment was made without the consent and approval of the board ·of aldermen.  The sittings of this board of equalization in November, 1882 and 1883, were, therefore, without authority.  Hence, the tax-payers were not called upon to file any complaint with the assessor in reference to erroneous assessments, for the reason that there was no legally appointed board to act upon them. This defect was fatal to the taxes of 1883 and 1884.

By an act approved April 19, 1884, it was attempted to legalize the act of the mayor in appointing the board ·of equalization, without the consent and approval of the board of aldermen.  This act attempts to validate the acts of said board.  This act also provides that said board "shall have full power, during the months of June and July, 1884, to correct, increase or reduce any unpaid assessment for the years 1883 and 1884; and any tax-payer delinquent for said years may appear before said board of equalization, by petition in writing, for correction of his tax bill as in said act provided."

We construe this act to mean that the tax-payer, in order to entitle him to a hearing before said board, was required to file a petition before it, setting forth his complaint; and that it was the duty of said board to be in session, during the months of June and July, in order to afford the tax-payer the entire two months in

which to file his petition.  Also, that the session, in
order to be legal and valid, should have commenced
on the first day of June, and continued until the last
day of July.  The board was created for a special pur-
pose; its life was fixed for two months, commencing on
the first day of June, during which time the tax-payer
had the right to file his petition, setting forth his com-
plaint; and a failure of the board to begin its session
on the first day of June was equivalent to a notice to
the tax-payers that the members of it had declined to
act as such; and a subsequent meeting of the board,
to-wit, on the 10th of June, was not a compliance with
the terms of the act, and the tax-payer was not re-
quired to take notice of it.

By an act approved April 28, 1884, which was
amended and re-enacted by an act approved May 12,
1884, it is enacted, by the third article of the latter
act, that all persons whose property was attempted to
be assessed for the years from 1876 to 1882, inclusive,
"in the sense that assessments against them were ex-
tended upon the assessor's books, and who have not
paid those assessments, are, as far as such prior levies
or assessments were inoperative and void, assessed now
upon the extended value of such property as appear-
ing on said books at the following rates," &c.

The act, *supra*, does not attempt to cure merely
defective assessments.  The appellee's petition does
not disclose that the alleged assessments for the
years, from 1876 to 1882, inclusive, were merely de-
fective and irregular.  Its petition alleges that said
alleged assessments were defective; but no fact is
alleged showing that they were merely defective.  It

is settled, beyond question, that where assessments are merely defective by reason of some mistake or omission of the officer, such defects may be cured by subsequent legislation. If the appellee wished to maintain his action, upon the ground that the alleged assessments were merely defective and not void, it was incumbent upon it to allege such facts, in connection with the assessments, as would show that they were merely irregular and defective, and not void. The simple allegation that the assessments were defective is not sufficient.

The third article of the act of the 12th of May, 1884, does not attempt to validate assessments that were merely defective, for it expressly declares that said assessments, in so far as they were inoperative and void, are now assessed.

It is also to be observed that said act recites no fact that shows that said assessments were merely defective, and not void. So, if the appellee can maintain its action at all, it must be upon the ground that the assessments, extended in the assessor's books for said years, were inoperative and void, and that the Legislature made the assessments for those years, and authorized an action upon them. So the question to be decided is, whether the Legislature has the constitutional power to assess *ad valorem* taxes.

By the Constitution of this State, the powers of the State are divided into three distinct departments—the legislative, executive and judicial. It is a fundamental principle that neither department can exercise the powers belonging to the other. It is well settled that the valuation of property, for the purpose of *ad valo-*

*rem* taxation, is, in its character, a judicial act.  (Cooley on Taxation, page 288.)  But, by the division of the powers of the government in this State, it belongs to the ministerial class of duties.  (Pennington v. Woolfolk, 79 Ky., 13; Cincinnati, &c., R. Co. v. Commonwealth, 81 Ky., 497.)

In the case of Hager v. Reclamation District, 111 U. S., 710, it is said: "But where a tax is levied on property, not specific, but according to its value, to be ascertained by assessors appointed for that purpose, upon such evidence as they may obtain, a different principle comes in.  The officers, in estimating the value, act judicially."

This court, as the proof and extract show, classes it among the judicial powers of the State; and, in California, the power is held to belong to the ministerial department of government.  The valuation or assessment of property in this State not only belongs to the ministerial department of government, but is an indispensable act in order to levy *ad valorem* taxes upon it.  In the nature of the thing, there must be an assessment.  On this subject Cooley, in his work on Taxation, 1st ed., page 259, says: "Of the necessity of an assessment, no question can be made.  Taxes by valuation cannot be apportioned without it.  Moreover, it is the first step in the proceedings against individual subjects of taxation, and is the foundation of all which follow it.  Without an assessment, they have no support, and are nullities.  It is, therefore, not only indispensable, but, in making it, the provisions of the statute under which it is to be made must be observed with particularity."

Can the Legislature, in order to authorize the collection of *ad valorem* taxes, fix the valuation upon the property to be assessed? It seems to be well settled that the Legislature, as the law-making department of the State government, has no constitutional power to fix the valuation of property which is to be taxed upon *ad valorem* principles. The reason for this rule is, that the legislative department has no judicial, executive or ministerial powers, and as the valuation in this State belongs to the ministerial powers of government, it follows that the Legislature has no constitutional power to make the valuation. Taxes are not debts. Debts are obligations, founded upon contracts, express or implied. But taxes are impositions, levied for the support of the State government, or for county or city purposes. When they are imposed by authority, they operate on the tax-payer "*invitum.*" When they take the form of a percentum, there must be a valuation as a basis of the power to levy and collect them. The tax-payer is entitled to be heard in fixing this valuation. The basis of the right to collect taxes from him consists in the valuation of his property; and to deny him the right to be heard in making this valuation, would be the taking of his property without due process of law. The valuation is the due process of law by which the right to take his property for taxes is begun; and the Legislature, having no judicial, executive or ministerial power, cannot make the valuation; but the valuation must be made by some person authorized to exercise in this State ministerial power, and such person is the assessor. But it is said that an assessment had been made by an assessor.

If so, the act says that such assessment was "inopera-
tive and void." Therefore, it was not merely defective,
but was an absolute nullity. It had not the shadow of
an existence. It was treated by the act as if no assess-
ment whatever had been made. In such state of case,
the Legislature had no constitutional power to make.
the assessment, not even as a curative act; for, as the
assessment was void, there was nothing to cure.

In the case of People v. Hastings, 29 Cal., 452,
where the assessor for the city of Sacramento had
made a void assessment of property, and the Legisla-
ture, by its own act, made an *ad valorem* assessment,
taking as a basis said assessor's attempted assessment,
the court said : "By recurring to the act of 1858 to
incorporate the city and county of Sacramento, it will
be seen that the assessor, who made the assessment for
the year 1860, was elected by the qualified electors of
the city and county of Sacramento, which is in a dif-
ferent district from that of the city of Sacramento.
The insufficiency of that assessment, as the basis for
taxation for the year 1863, is apparent on several
grounds. It was not made by an assessor elected by
the qualified electors of the district in which the prop-
erty to be taxed was situated—the city and county of
Sacramento not being the same district as that of the
city of Sacramento. The making of the certified copy
of the assessment roll for the year 1862 so as to
include property within the city of Sacramento, can
not be regarded, in any sense, as the making of an
assessment of such property by the assessor. The
copying by one officer of the valuation made by
another officer is not a valuation made by the first

officer.  If it is a valuation, in any sense, for the year 1863, it is a valuation made by the Legislature; and in view of the division of the powers of the government into three departments—the legislative, executive and judicial—it will not be claimed that the legislative department was competent to perform the purely executive functions of an assessor.  The objection is not obviated by the finding that the assessment was 'duly and regularly made' in accordance with the statutes, for the only assessment that was provided for by the statutes, was the attempted adoption of a previous assessment, and if any other than such an assessment had been made, the valuation would not have been "ascertained as directed by law.'"

In the case of the People v. San Francisco Savings Union, 31 Cal., 138, it was held: "A valuation is the very foundation of proceedings for apportioning and collecting a tax upon property.  It is essential to the validity of a property tax.   *  *  *  If the assessor has failed to make an intelligible valuation, that duty cannot be performed or the defects remedied by the Auditor.  Nor can the Legislature make the valuation."

Where an assessment has been, in fact, made by the assessor, which assessment, by reason of some irregularity in his proceedings, is merely defective, but not void, such defect may be cured by legislation.  In such case, the curative statute relates back to the assessment, and makes it sufficient, for the purpose of collection, by virtue of said assessment.  The power of the Legislature to pass a valid curative act consists in the fact that there was an assessment, having some elements of vitality, to which more strength may be given

for the purpose of making it enforceable. The assessment must have some vitality, in order to give the Legislature jurisdiction of it. If it has no vitality, but is void, the Legislature has no jurisdiction of it. In the nature of things, there can be no jurisdiction over a thing that does not exist, and an act that is void has no legal existence whatever. The assessment being void, the Legislature has no jurisdiction over it. It could not cure the act of assessment, because there was nothing to be cured. All it could do was to provide for a re-assessment and its collection. The act, in so far as it attempted to assess the appellants' property, is without constitutional authority, and is, therefore, void.

The judgment of the lower court in each of the cases is reversed, with directions to dismiss them.

*Case 19—PETITION—October 30, 1888.