**NATIONAL DISTILLERS PRODUCTS CORP. v. BOARD OF EDUCATION OF FRANKLIN COUNTY ex rel. REEVES.**

Court of Appeals of Kentucky.

Oct. 24, 1952.

As Modified on Denial of Rehearing March 27, 1953.

482

Earl S. Wilson and William Marshall Bullitt (of Bullitt, Dawson & Tarrant), Louisville, for appellant.

William A. Young, Frankfort, Hensley & Logan, Louisville, Lucian L. Johnson, Louisville, of counsel, for appellee.

STEWART, Justice.

The sole question in this case is whether ad valorem taxes paid by National Distillers Products Corporation to the Franklin County Board of Education, hereinafter called the National Distillers and the Board, respectively, on each assessed valuation of whiskey fixed by the Kentucky Tax Commission as of September 1, 1946, September 1, 1947, and September 1, 1949, should have been computed by applying to each such valuation (a) the school rate levied prior to each September 1st assessment date or (b) the school rate levied in the calendar year after each September 1st assessment date.

Payment of taxes on each annual September 1st assessment is deferred under KRS 132.160 until (1) the whiskey is withdrawn from bond, or (2) the federal tax thereon becomes due or is paid, or (3) the spirits are removed from the warehouse for transfer in bond out of this state. Accordingly, when whiskey is withdrawn from bond it may have an accumulation of deferred taxes for several years to be computed at the tax rate applicable to the assessed valuation made as of September 1st of each year; or, there may be no taxes due as in the case where whiskey is manufactured after September 1st of a particular year and withdrawn from bond before September 1st of the following year. The warehouseman having the custody of whiskey in bond is required to report on the 1st day of January, May and September of each year all whiskey withdrawn from bond during the four months period preceding each such reporting date. The deferred taxes on whiskey so withdrawn mature on the next day following the date the report is required to be filed. An 8% penalty accrues if the warehouseman fails to pay the taxes within 15 days after they are due, pursuant to KRS 132.180.

Many years prior to 1947 the school tax rate in Franklin County remained constant, being fixed at 70¢ on each $100 of the assessed valuation of all taxable property. On May 13, 1947, a 90¢ rate was levied; on June 7, 1948, a $1 rate was levied; and on June 21, 1950, a $1.20 rate was levied. When National Distillers filed periodic reports, as required by law, of the whiskey in controversy withdrawn by it from bond, it applied the 70¢ rate levied June 11, 1946, to whiskey assessed as of September 1, 1946, the 90¢ rate levied May 13, 1947, to whiskey assessed as of September 1, 1947, and the $1 rate levied June 7, 1948, to whiskey assessed as of September 1, 1949.

The Board contends that National Distillers should have computed the taxes in dispute by applying the 90¢ rate to whiskey assessed as of September 1, 1946, the $1 rate to whiskey assessed as of September 1, 1947, and the $1.20 rate to whiskey assessed as of September 1, 1949; and the Board sued for a declaration of rights and for additional taxes, penalties and interest on the alleged ground that the taxes paid to it by National Distillers in the manner mentioned on whiskey physically located in Franklin County on September 1st in the years 1946, 1947 and 1949, respectively, were wrongfully computed by applying the tax rate levied prior to each September 1st assessment period. The Chancellor in his decree applied the tax rate fixed by levy after the September 1st assessment for each of the years in question and awarded judgment to the Board for the additional taxes, penalties and interest so computed on these higher rates. National Distillers has appealed.

Our inquiry in the case at bar narrows down to this issue: Should distilled spirits in storage in bonded warehouses be taxed for school purposes at the same rate imposed upon all other tangible personalty within the taxing jurisdiction; or should such spirits be permitted to lag one year behind the rate which all other property in the same class must bear?

In an unbroken line of decisions this Court has adhered to the principle that distilled spirits are like all other tangible personal property situated within this Commonwealth and are therefore subject to the same statutory and constitutional requirements which govern the taxation of such property generally. In the recent case of Reeves v. Jefferson County, Ky., 245 S.W.2d 606, 610, we made the following pertinent statement on this point: "Since distilled spirits are property within the meaning of Section 172 of our Constitution, which subjects 'all property' to taxation, it necessarily follows that distilled spirits are 'property' within the meaning of the provisions of the Constitution, which mandatorily requires uniformity in the assessment of property for ad valorem taxes."

The following excerpt from Section 171 of the Constitution does not seem to leave any room for doubt that whiskey shall be taxed like other tangible personalty: "Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws." Moreover, KRS 132.150 clearly provides that the prevailing tax rate applied to distilled spirits for all local purposes shall not be different from that levied on all tangible personalty.

However, counsel for National Distillers come forward with an ingenious argument, which is that it takes fourteen and one-half months to complete a July 1st assessment of property generally, whereas it requires less than two months to complete a September 1st assessment of whiskey, so that the significance of this almost one-year's difference in time lag clearly demonstrates that the tax levied subsequent to a July 1st assessment was the "prevailing rate" at the time the taxes on such assessment became due, whereas the tax rate levied prior to a September 1st assessment of whiskey was the "prevailing rate" at the time taxes on the first withdrawals of such whiskey became payable.

This line of reasoning falls of its own weight when we examine the intent of the Legislature with reference to the assessment of whiskey as it is identified by law with other tangible personalty. When the present Constitution was adopted in 1891, the entire range of revenue and taxation statutes was revamped and reenacted with the result that September 15th was designated as the assessment date for all property, including distilled spirits. See Acts of 1892, Chap. 103, pp. 277–336. In 1906, the assessment date for all property, including distilled spirits, was changed to September 1st. See Acts of 1906, Chap. 22, pp. 88–248. In 1918, the date for assessing all property other than distilled spirits was drawn back to July 1st of each calendar year, but the assessment date of distilled spirits in bond was left at September 1st. Acts of 1918, Chap. 11; p. 31. More recently, the assessment date for whiskey and other property have been merged once more, and the valuation of all property is now assessed as of January 1st of each calendar year. Acts of 1949 Extraordinary Session, Chap. 4, p. 25.

From a review of the foregoing legislation there can be no doubt but that the assessment of property generally, formerly made as of July 1st of each calendar year, and the assessment of distilled spirits, heretofore made as of September 1st of each calendar year, were clearly intended to be the basis for the imposition of ad valorem taxes for all purposes for one and the same fiscal period. Indeed, when the original counterparts of KRS 132.150 and KRS 132.160 were enacted in 1882, Acts of 1882, Chap. 1184, p. 56, which Act extended to the distilling industry the privilege of deferring the payment of ad valorem taxes upon distilled spirits until such time as the same were ready to be placed on the market, the nature and purpose of the Act was made clear in Section 1 by this language: "There shall be levied and collected upon all distilled spirits in this state the same rate of taxation that is imposed upon other property by the laws of this state for state and county purposes." It is therefore obvious that the Legislature had no intention that whiskey assessed in one calendar year should be available for taxes in a different fiscal year, or that the prevailing

rate applied to distilled spirits should be different from that applied to all other tangible personalty.

We come now to a consideration of the particular issue upon which the correct decision of this entire case depends, and we may briefly state the proposition in the form of a question: Must the assessment precede the levy of the tax?

Two early Kentucky cases lend strong support to the idea generally that, where tax collection methods are concerned, an assessment should be made before a levy may be imposed. In Slaughter v. City of Louisville, 89 Ky. 112, 8 S.W. 917, 920, this statement is found: "The valuation or assessment of property is not only a judicial, but an indispensible act, in order to levy ad valorem taxes upon it. In the nature of the thing, there must be an assessment." In City of Covington v. Carroll, 32 Ky.Law Rep. 1255, 108 S.W. 295, 296, the City of Covington, a second class city, annexed the sixth-class town of 'Central Covington, and, for the fiscal year commencing January 1, 1907, the City of Covington adopted the assessment made by the assessing authorities of Central Covington as of September 15, 1906. In holding the levy of ad valorem taxes made by the City of 'Covington for the fiscal year 1907 upon the assessment thus adopted to be invalid, the court reasoned as follows: "There being no assessment (by the City of Covington in the area that was formerly Central Covington) as of the 15th of September, 1906, there could not be a levy of taxes for the fiscal purposes of the year 1907, for the reason that it is indispensible, to maintain a levy of taxes, that there should have been an assessment of the property upon which the levy must be based. Cooley, in his work on Taxation (volume 1, p. 597), says: 'An assessment, when taxes are to be levied upon a valuation, is obviously indispensible. It is required as the first step in the proceedings against individual subjects of taxation, and is the foundation of all which follow it. Without an assessment they have no support, and are nullities. The assessment is therefore the most important of all the proceedings in taxation, and the provisions to insure its accomplish-

ing its office are commonly very full and particular.'" The recent case of Jefferson County Fiscal 'Court v. Jefferson County, 257 Ky. 507, 78 S.W.2d 324, 325, considered the effect of a change by the Legislature of the county fiscal year dates as the change related to the levy of taxes upon the assessment of property in the county, and this Court, in disposing of the case, interposed the following language, which seems applicable to the present inquiry: " * * * nothing in this opinion shall be construed to authorize the levy of taxes for any fiscal year subsequent to the fiscal year 1934–35 based on any assessments other than as of July 1st of the year previous to the beginning of the fiscal year in question". In this same connection KRS 133.185 very definitely states that the assessment must precede the levy of the tax rate, employing these words: "No tax rate for any county or school district levy to be based upon the assessment of property required to be equalized by the Kentucky Tax Commission shall be determined before the assessment of property for the county in which such district lies is certified by the Kentucky Tax Commission to the county court clerk as provided in KRS 133.180." We therefore conclude that the assessment is a condition precedent to the levy of the tax.

The contention of National Distillers may, we think, be reduced to the argument that KRS 132.160 cannot be complied with if it is construed to mean that taxes on distilled spirits are to be computed by employing the tax rate levied following the assessment. This argument is fallacious because actually the foregoing section does not require that the taxes maturing on a particular assessment of whiskey be paid before the tax has been levied and the normal due date has been reached. We are of the opinion that KRS 134.020, the general ad valorem tax statute, applied to whiskey where the tax payments were not deferred, and under the latter section, prior to its amendment in 1949, all current taxes, except as otherwise provided by law, became due on March 1st after the assessment. Pursuant to KRS 132.160, also prior to its amendment in 1949, tax payments on distilled

spirits in bonded warehouses were deferred until the time of withdrawal therefrom, only in cases where such spirits were not withdrawn from bond "before March 1 after the assessment." Therefore, it is clear that KRS 132.160 applied only to deferred taxes that otherwise would be due and payable under KRS 134.020. If whiskey had been removed from bond before the normal due date for taxes generally, the tax for that year became due and delinquent at the same time as all other ad valorem taxes, pursuant to KRS 134.020. But if whiskey had been kept in bond until after the normal due date, the payment of the tax was postponed until the withdrawal from bond and KRS 132.160 applied. This disposes of the argument that it was impossible for National Distillers to comply with KRS 132.160.

But, it is contended if the Board's claim for increased taxes prevails in a case such as this that a hardship will result because warehousemen who are bailees cannot recover from the actual owners of distilled spirits any additional taxes which might be subsequently imposed upon whiskey stored with them and withdrawn prior to the fixing of the rate but after the date of assessment. This same plea was advanced in Commonwealth v. Greenbaum, 139 Ky. 138, 129 S.W. 555, 557, and there the Court made this answer: "Furthermore, when the distiller manufactures and stores the whisky and issues warehouse receipts to his purchasers, he does so knowing that the only protection he has, so far as the statute is concerned, is the lien given upon the whisky. If he desires additional protection, he must make his contracts accordingly. If he fails to do so, a hardship may result, but it is a hardship against which the Legislature has not provided."

National Distillers finally insists that the contemporaneous construction placed upon the applicable statutes and followed for a long period of time by those charged with the duty of their interpretation and execution has established the rate fixed prior to each September 1st assessment as the legal levy for that particular assessment for all subsequent purposes. We have already decided that the interpretation asserted by National Distillers as to the applicable statutes

in this case is an erroneous one, so that for this reason alone the doctrine of contemporaneous construction has no application here.

We are persuaded that the judgment and declaration of rights rendered by the Chancellor are in all respects correct.

Wherefore, the judgment is affirmed.