(110 App. Div. 797.)

PEOPLE ex rel. FOURTEENTH STREET REALTY CO. v. KELSEY, Comptroller.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

CORPORATIONS—FRANCHISE TAX.

> The owners of subdivided interests in certain real estate conveyed it to a trustee, who then conveyed to a corporation, receiving a purchase money mortgage, and $499,000 of the capital stock; the remaining $1,000 of the stock being sold for cash. The purposes of incorporation included a general business in the purchase of real estate, the sale of mortgages, and stocks and bonds. *Held*, that the corporation was subject to a franchise tax.
>
> [Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, § 214.]

Certiorari by the people, on the relation of the Fourteenth Street Realty Company, against Otto Kelsey as comptroller of the state, requiring him to review respondent's proceedings in refusing to resettle a franchise tax imposed upon relator. Determination confirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and KELLOGG, JJ.

Spiegelberg & Wise (Edmund E. Wise, of counsel), for relator.

Julius M. Mayer, Atty. Gen., and Horace McGuire, Deputy Atty. Gen., for Comptroller.

CHASE, J. The relator is a domestic corporation organized May 25, 1903. It has a capital stock of $500,000, and the duration of its existence is 50 years. The certificate of incorporation states:

"The purposes for which it is to be formed are to acquire by purchase, exchange, lease or otherwise, to hold, improve, develop, operate, sell, lease, mortgage or exchange, real estate, chattels real, mortgages and any interest in real property, to erect, alter, repair, manage and operate any and all kinds of buildings, and to purchase, acquire, hold and dispose of the stocks, bonds, and other evidences of indebtedness of any corporation, domestic or foreign, and issue in exchange therefor its stock, bonds and other obligations."

In 1903 numerous owners of subdivided interests in certain real property in New York City conveyed the same to a trustee. The trustee leased the property for a period of 21 years from January 1, 1904, at a rental of $70,000 per year, payable quarterly in advance. The relator purchased said real property of the trustee for $1,199,000, giving to him therefor a purchase money mortgage of $700,000 and issued to him $499,000 of its capital stock. The balance of $1,000 of its capital stock was sold for cash. The tenant took the real property January 1, 1904, and by his lease he was required to pay the taxes thereon. It was necessary for the relator to make certain repairs, additions, and changes in the buildings on the property, which involved an expenditure of $73,000, for which purpose it borrowed that amount. It now has an annual income of $70,000, from which it is necessary for it to pay for insurance about $2,200 and interest on the purchase money mortgage $31,500 per annum, leaving $36,300, net income applicable to the payment of dividends or indebtedness or to employment in any business within the purposes for which it is incorporated. The business of the relator is in no way

limited or confined to the real property now owned by it, or to the life of the present lease of said property. The purposes of its incorporation are very broad, and the net income from the property now owned by it is more than 7 per cent. on its capital stock. At the present time it owns the very valuable property rented as stated and by the tenant used with other adjoining property, and the reason for its taking title to such property is stated by its vice president to have been that "owing to Mr. Sielcken's [the trustee] absences in Europe, and also to the possibilities of dower rights, judgments, etc., it was considered advisable by all parties to place the title in the hands of a corporation which would endure for the whole period of the lease." It may, however, do a general business in the purchase, sale, and exchange of real property, including the erection, and management of buildings and the purchase and sale of mortgages, and also the stocks and bonds of domestic and foreign corporations. In People ex rel. Wall & Hanover Street Realty Company v. Miller, 181 N. Y. 328, 73 N. E. 1102, the court say:

"And when we appeal to the reason of the thing, it seems plain that the chartered privileges of a corporation as defined in its certificate of incorporation, which is invariably framed in the language of the corporators, should be the index to its relations to the state rather than the possibly sporadic and shifting exercise of any one or more of a larger number of the powers delegated to it."

To relieve the relator from the payment of the franchise tax would be to extend the doctrine of the Ft. George Realty Company Case, 179 N. Y. 491, 71 N. E. 463, which it is said in the Wall & Hanover Street Realty Company Case should not be done.

The determination of the Comptroller should be confirmed, with $50 costs and disbursements. All concur.