The term "employed," in Tax Law (Laws 1896, p. 856, c. 908) § 182, as amended by Laws 1901, p. 1365, c. 558, § 2, and Laws 1906, p. 1196, c. 474, § 2, imposing a franchise tax on the capital of the corporation employed within the state, means such a utilization of the capital as to render it in some way beneficial or advantageous, having in view the purpose of the corporate existence; and, where the actual object of a corporation empowered to deal in real estate was to acquire title to an old property subject to leases, and to demolish the building and erect a new one for rental purposes, and the corporation was merely engaged in construction work, for which bonds had been issued, all its capital and income having been expended in acquiring title and in terminating the leases, the capital was not "employed," so as to authorize the imposition of the tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 214; Dec. Dig. § 117.*

For other definitions, see Words and Phrases, vol. 3, pp. 2377–2380; vol. 8, p. 7649.]

Certiorari by the People, on the relation of the Fifth Avenue Building Company, to Charles H. Gaus, as Comptroller of the State of New York, to review his refusal to resettle a franchise tax imposed on the relator. Determination annulled.

Argued before SMITH, P. J., and CHESTER, KELLOGG, SEWELL, and COCHRANE, JJ.

Lord, Day & Lord (Howard Mansfield, of counsel), for relator.

Edward R. O'Malley, Atty. Gen., and Edward H. Letchworth, Deputy Atty. Gen., for respondent.

COCHRANE, J. The relator is a domestic corporation, organized in February, 1908. Its capital stock is $4,000,000. On this amount the respondent has imposed a franchise tax, under section 182 of the tax law (Laws 1896, p. 856, c. 908), as amended by Laws 1901, p. 1365, c. 558, § 2, and Laws 1906, p. 1196, c. 474, § 2, at the rate of three-fourths of one mill, amounting to $3,000. The question is whether the capital stock of the relator was "employed," within the meaning of that section.

The power of the relator, as disclosed by its certificate of incorporation, is quite broad, including the right to acquire, hold, improve, develop, and manage any real estate, and to erect thereon buildings or other structures, and to mortgage, lease, or sell the same, and to lease any stores, rooms, or part of any building or other structures at any time so owned. The immediate and principal object of the corporation, however, seems to have been to acquire title to the old Fifth Avenue Hotel property in the city of New York, and to demolish the same and erect on the site thereof a new store and office building for rental purposes. Title to said hotel property was acquired by the relator immediately after its incorporation, in February, 1908. The old hotel was demolished, and the construction of the new building in place thereof was in process, but had not yet been completed, on the 31st of October, 1908. All of the capital of the relator was used in the purchase of the property, and for the construction of the new building bonds were issued. It has acquired no other real estate, and its operations have been limited to the erection of this one building in place of the one demolished. No dividends have been earned or paid, and no income has been received, except that the relator received about $30,000 as rents from leases existing when it acquired the property; but this amount was expended in terminating unexpired leases, so that the building might be demolished.

Considering the broad provisions of its certificate of incorporation, it may be that the relator was exercising its corporate franchises and carrying out the declared purpose of its existence. But, considering the nature of its operations and the actual purpose of its existence, we think, under the circumstances here disclosed, it would be a harsh and unreasonable construction of the statute to hold that the capital stock of the relator was "employed," within the fair meaning and purpose of the statute. The term "employment," as here used, means such a utilization of the capital as to render it in some way beneficial or advantageous, having in view the purpose of the corporate existence. The relator in the present instance was merely getting ready to reap the benefits of such utilization. It had earned no dividends, and it had as yet derived no benefit or advantage from its capital. It was performing preliminary operations, and passing through a for-

mative process, and had not yet engaged in the business which it was in fact designed to conduct, or reached the stage where it could fairly be said to have its capital employed, in the sense that it was actually producing any benefit, within the purpose or contemplation of the corporate life of the relator.

The receipt by the relator of the inconsiderable rents under the circumstances here disclosed we deem unimportant. That feature of the case was a mere incident of the situation. When the relator bought the property, it did so subject to the leases, and it took almost immediate steps to terminate them, and it doing so expended all that it received therefrom. What it received in this way was clearly not within the purpose for which it acquired the property, and it derived no actual benefit from these rentals. The leases were in fact detrimental, rather than beneficial, to the corporate purposes. The relator was not responsible for the leases, and simply made the best of the situation in endeavoring to terminate them, without having any discretion or exercising any control in respect to their creation. The case, therefore, is clearly distinguishable from People ex rel. Vandervoort Realty Company v. Glynn, 194 N. Y. 387, 87 N. E. 434, People ex rel. Wall & Hanover Realty Company v. Miller, 181 N. Y. 328, 73 N. E. 1102, and People ex rel. Fourteenth Street Realty Company v. Kelsey, 110 App. Div. 797, 97 N. Y. Supp. 197, relied on by the respondent.

The determination should be annulled, with $50 costs and disbursements. All concur.