PEOPLE ex rel. TETRAGON CO. v. SOHMER, State Comptroller.

(Supreme Court, Appellate Division, Third Department. May 6, 1914.)

1. TAXATION (§ 117*)—CORPORATIONS—"ENGAGED IN BUSINESS."

 Certain interests in real property passing under wills being in litigation, a corporation was formed to facilitate the handling of the property and the conduct of the litigation, with a capital of $1,500, divided into

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

60 shares, of $25 each. On the formation of the corporation, W. conveyed an undivided two-thirds and a one-fifth interest to the corporation by a quitclaim deed, receiving the entire capital of the corporation; the stock being issued to her four children in equal shares. The litigation having terminated favorably as to such interests, the trustees under the wills sold the properties, with the exception of one parcel, realizing large sums, which were paid to the corporation, which, after deducting expenses, etc., distributed the balance to the stockholders. The corporation held and leased the interests, conducted the litigation, and had officers and a board of directors, through whom the moneys received by it from the trustees were paid out. *Held*, that the corporation was "engaged in business," within Tax Law (Consol. Laws, c. 60) § 182, imposing a franchise tax on corporations doing business and exercising corporate franchises within the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 214; Dec. Dig. § 117.*

For other definitions, see Words and Phrases, vol. 3, p. 2394.]

2. TAXATION (§ 123*)—CORPORATION—DISTRIBUTION OF CAPITAL—DIVIDENDS —"CAPITAL STOCK."

The distribution of the proceeds of the sale of such interests among the stockholders constituted a distribution of capital, and not the payment of a dividend, and was therefore not taxable as a dividend; the terms "capital stock" and "capital" being practically the equivalent of each other, when considered as the basis for the imposition of a franchise tax, "capital stock" meaning, not the share stock, but the property of the corporation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 222; Dec. Dig. § 123.*

For other definitions, see Words and Phrases, vol. 1, pp. 959–967; vol. 8, p. 7595.]

Certiorari by the People, on relation of the Tetragon Company, against William Sohmer, as State Comptroller, commanding him to certify and return to the office of the clerk of Albany county his proceedings in determining the franchise tax against relator for the year ending October 31, 1910. Writ granted, and tax annulled.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Parsons, Closson & McIlvaine, of New York City (Herbert Parsons, of New York City, of counsel), for relator.

Thomas Carmody, Atty. Gen. (Franklin Kennedy, Deputy Atty. Gen., of counsel), for respondent.

LYON, J. The relator is a domestic corporation organized in 1906, with a capital stock of $1,500, divided into 60 shares, of $25 each. The purposes for which the corporation was formed, as stated in its certificate of incorporation, were to acquire, buy, invest in, hold, improve, manage, lease, sell, mortgage, pledge, and deal in real and personal property in this and other states and countries. Such purpose and the acts of the relator, as stated in relator's amended capital stock report for the year ending October 31, 1910, were as follows:

"To take title to undivided interests in certain real property situated in the city of New York, which property was in litigation and subject to a large amount of arrears of taxes and assessments and street opening and other proceedings in which further assessments would be levied. Said undivided

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

interests in said property had been inherited from former owners, under whose wills the litigation had arisen. For purposes of convenience in the litigation, it was thought best to temporarily hold the title to said undivided interests through a corporation. All the company has done has been to hold the bare legal title to said undivided interests until the property could all be sold. When the property has all been sold, the company will be dissolved. * * * The company has never improved, sold, mortgaged, or dealt with any of the property in which it now or formerly had an interest, nor has the company received any income or rents therefrom."

Upon the hearing before the comptroller the following testimony was given on behalf of the relator relating to the purposes of the formation of the company:

"Q. As a matter of fact, the real purpose of the organization of the company was to have a holding company to hold the interests of these four stockholders? A. Yes; on account of this litigation. The litigation lasted for some years after 1906, and it was becoming embarrassing for an individual, especially as there were a great many heirs in the litigation as it was. It was hard to serve them. They were people who traveled a great deal, and they were away from the vicinity of New York all the time. It was delaying litigation to have them away, because they were constantly being served with papers; and for the further reason, as I stated before, it was becoming embarrassing in the payment of taxes and counsel fees and that sort of thing. It would be more convenient to handle it as a corporation. Q. The corporation actually performed the duties for which it was incorporated? A. I should say frankly that it accomplished its purpose."

[1] Upon the formation of the corporation Mrs. Mary E. Wright, who had inherited undivided two-thirds and one-fifth interests in said real estate, the title to which was in litigation, conveyed said interests to said corporation by quitclaim deed, and as the consideration for such conveyance received the entire capital stock of the company, which under her direction was issued to her four children in equal shares, and they continued to hold the same until the voluntary dissolution of the company in March, 1913. The litigation having terminated favorably as to the interests so conveyed by Mrs. Wright, the trustees under the wills of former owners, in whom were vested the powers of sale of said real estate, in March, 1910, sold the properties, with the exception of one parcel, at public auction, realizing for the former interests of Mrs. Wright, after deducting the expenses of administration, $102,785.02, of which $5,000 was for convenience paid to said stockholders direct, $25,849.02 was paid on account of legal services and disbursements, and the balance of $71,936 was paid to said company, and by it deposited in bank and immediately distributed to the shareholders of the company. The relator estimated the value of its interest in the unsold parcel of real estate, October 31, 1910, at $48,000.

The state comptroller treated the sum of $76,936 so paid by said trustees to the relator and its stockholders as a dividend of 5,000 per cent. paid on the capital stock employed by the relator in the state during the year ending October 31, 1910, and assessed upon said corporation a tax of one-fourth of one mill for each 1 per cent. of said dividend, which tax amounted to the sum of $1,875. The relator duly applied for a revision and resettlement of said assessment, which, after hearing had, the state comptroller refused to modify. Said sum not

having been promptly paid, the state comptroller imposed a penalty of $93.75, which tax and penalty the relator paid under protest September 7, 1911, and thereupon instituted this proceeding, claiming that the determination of the comptroller was erroneous and illegal, for the reasons that the relator, during the year ending October 31, 1910, was not engaged in business, nor was any portion of its capital stock employed in business, within this state, within the meaning and intendment of the Tax Law, and that the said amount distributed to its shareholders did not constitute a dividend, but was a distribution of surplus capital, and that, if the corporation was subject to any tax, it should have been computed upon the basis of $48,000, the appraised value of the capital stock October 31, 1910.

There is no claim that any portion of the capital of the relator was employed otherwise than as hereinbefore stated; but, as appears from the record, the relator held and leased the interests formerly owned by Mrs. Wright in the various parcels of real estate, and represented its stockholders as a litigant in important litigation which extended to the Court of Appeals, to that end employing and paying counsel and serving to expedite the litigation, and as a convenience and relief to its stockholders and others concerned in it. It had a president, secretary, treasurer, and a board of directors, through whom the moneys received by it from said trustees and on deposit in bank were paid out by it in satisfaction of obligations, and distributed among its stockholders. The relator concedes that it accomplished the purpose for which it was incorporated. In view of these facts, we think the relator must be held to have been engaged in business, within the intendment of section 182 of the Tax Law (Consol. Laws, c. 60; Laws of 1909, c. 62). People ex rel. Waclark Realty Co. v. Williams, 198 N. Y. 54, 91 N. E. 266, 28 L. R. A. (N. S.) 371; People ex rel. Vandervoort Realty Co. v. Glynn, 194 N. Y. 387, 87 N. E. 434; People ex rel. Fourteenth St. Realty Co. v. Kelsey, 110 App. Div. 797, 97 N. Y. Supp. 197, affirmed 184 N. Y. 572, 77 N. E. 1194; People ex rel. Coney Island Jockey Club v. Sohmer, 155 App. Div. 842, 140 N. Y. Supp. 507, affirmed 210 N. Y. 549, 104 N. E. 1137.

[2] The second question to be considered is whether the distribution to its stockholders of the proceeds of the sale of its interests in the real property constituted a distribution of capital or the payment of a dividend. As bearing upon the decision of this question, it is entirely immaterial in what sum the relator was capitalized, whether for $1,500 or for $150,000, which was approximately the value of the interests conveyed to it by Mrs. Wright, which interests, prior to the time of such conveyance, had been determined by the Supreme Court to be valid. The value of the capital stock is the value of the property of the corporation, without regard to the amount of the capital stock. The term "capital stock" means, not share stock, but the property of the corporation. Capital stock and capital are practically the equivalent of each other, when considered as a basis for a franchise tax. People ex rel. Commercial Cable Co. v. Morgan, 178 N. Y. 433, 70 N. E. 967, 67 L. R. A. 960. The relator by such purchase parted with its entire issue of capital stock and became vested with the title

to Mrs. Wright's interests in the real property as its sole asset, and it appears from the evidence that the relator never received any sum on account of its leases of such interests, or from any source aside from the proceeds of the said sale of the real property; and the evidence also shows that the real property was worth no more at the time it was sold by the trustees in 1910 than at the time the relator purchased it in 1906, and hence that no profit had accrued thereon. We think the moneys received from said trustees upon the sale of the real property, and by them paid to the relator, and by it distributed to the stockholders, constituted a distribution of capital, and not the payment of a dividend. However, the relator, having been engaged in business within this state, is liable for the payment of a franchise tax pursuant to the provisions of section 182 of the Tax Law.

The determination of the comptroller should therefore be annulled, with $50 costs and disbursements to the relator, and the matter remitted to the comptroller to determine the franchise tax in accordance with this opinion. All concur.