## City of Lexington v. Cooke.

February 25, 1949.

Strother Kiser for appellant.

William B. Gess and Scott Reed for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appeal is from a judgment fixing the value of property owned by the appellee, L. R. Cooke, for tax assessment as of July 1, 1945. The city contends the valuations are too low.

The property at 180 East High Street was returned by the owner at $30,000. The city assessor raised the assessment to $60,000 and that valuation was approved by the board of equalization. On Cooke's appeal to the quarterly court a default judgment fixed the valuation at $30,000. The city appealed to the circuit court, which placed it at $35,000. Property at 182 East High Street was listed by the owner at $8,000, raised to $13,000, reduced by the quarterly court to $8,000, and that sum was affirmed by the circuit court.

The larger property was purchased by Cooke in

May, 1944, the price being indicated by revenue stamps on the deed as $70,000, but it was actually $65,000, the balance representing refund of insurance premiums and taxes paid by the vendor. It was assessed as of July 1, 1944, at $52,000, and taxes were paid upon that basis. The listing at $30,000 the next year by the owner was upon information as to similar property in the vicinity and that all property throughout the city was being assessed at 50 percent of its true value. Cooke purchased the other property about the same time at a cost of $16,-000, and it was assessed that same year at $12,000.

Much evidence was heard. The testimony of the city assessor as to methods and standards of assessment is wavering and uncertain, and evidence as to other similar property is likewise indefinite. The property owner does not claim that $30,000 and $8,000 are the true values but relies upon the general policy of placing the assessments at 50 percent of actual cash value. We adopt the following analysis of the evidence and conclusions of the trial court as our opinion:

"From time when the memory of the witnesses runneth not to the contrary it has been the policy of the City Assessor of Lexington when a parcel of real estate is sold at the next assessment date to assess the property at eighty per cent of the purchase price. Sometimes the purchaser will be able to get the assessment reduced in subsequent years, but Mr. Davis, a real estate broker, testified that the matter of adjustment in subsequent years has never been given serious consideration, and has not as a rule worked out satisfactorily to the purchaser. The City Assessor gave as the reason for the assessment at eighty per cent of the sale price instead of the total sale price or fair cash value as required by the statute that the city does not want to work an injustice or hardship on any one, but wants to treat every one right. This very gracious concession on the part of the city officials is commendable, but they seem to overlook the fact that under the Constitution two elements enter into the assessment of property, namely,

"(1) Taxes shall be uniform upon all property subject to taxation, and

"(2) All property shall be assessed at its fair cash value.

"It was admitted by the city's witnesses that, when a piece of property is sold and assessed at eighty per cent of its purchase price, no attempt is made to equalize the assessed value of the surrounding property or of property of like kind and character throughout the city. A considerable per cent of the property in the city changes hands each year. The people who purchase this property are placed upon a different basis if the property in the city as a whole is not assessed at as much as eighty per cent of its fair cash value. Mr. Bronston, the City Assessor, said he thought property in the city, on an average, was assessed at about 65 per cent of its fair cash value. If this is correct, the purchaser of a piece of property at the next assessment should assess it at 65 per cent of its purchase price. Mr. Williams testified, and according to the stipulation, the other two members of the Board of Equalization, if present, would have testified, that 25 per cent of the property of the city not exempt from taxation would sell for an amount equal to the entire city assessment. If this is correct the property of the city as a whole is assessed at only 25 per cent of its fair market value, and when a person buys property he ought to give it in at the next assessment at 25 per cent instead of 80 per cent of the purchase price. Mr. Davis struck a medium between these two and said that in his opinion, on the present inflated market, the property of the city as a whole is assessed at forty to fifty per cent of its fair market value; but he later said he would estimate that business property is assessed at fifty per cent of its fair market value.

"In the case of Eminence Distillery Company v. Henry County Board of Supervisors, 178 Ky. 811, 200 S.W. 347, 352, the Court of Appeals had before it a case where it was admitted that Henry county, by its Assessor and Board of Supervisors, had uniformly and systematically valued and assessed the real property of the county at sixty per cent of its fair cash value, but the plaintiff's property had been assessed at $105,000.00 by the Assessor and at $100,000.00 by the Board of Supervisors. On appeal the Circuit Court fixed the fair market value of the property at $75,000.00 and reduced the assessment to that amount. In reducing the assessment to $45,000.00, sixty per cent of its fair market value, the court said:

" 'The circuit court was in error when, after it found the "fair cash value" of the property of appellant to be of the value of $75,000, in failing to reduce such valuation for taxation to 60 per cent of its value, or $45,000, so as to cause it to be assessed for taxation upon the same percentage of value as the other property in the county was assessed for taxation, as it had no other means of redressing the grievance of which appellant justly complained, and such action could result in injury to no one.'

"It was argued on behalf of the city that the '80 per cent of the purchase price rule' for property recently purchased was uniform as to this group of property owners, i. e., those who have recently purchased property. The Constitution and statutes, however, provide that all property, that which has been recently purchased as well as other property, must be assessed at a uniform level. In McCracken Fiscal Court v. McFadden, 275 Ky. 819, 122 S.W.2d 761, 764, the court said: 'Whenever the tax assessing authorities have systematically disregarded the imperious demands of the Constitution and Statutes, that all property shall be assessed at its fair cash value, by adopting a general level of proportionate values, everybody must have been treated alike. When it was shown that the property involved in a case had not been assessed at that uniform level, this Court has required an adjustment.'

"The Constitution and statutes and decisions of the Court of Appeals require the taxing authorities to use the same yard stick in measuring all property. They cannot use a yard stick of 36 inches for some property, or 30 inches for some, and 24 inches for another. They cannot assess some property at 100 per cent of its fair cash value, some at 80 per cent, some at 65 per cent and some at 50 per cent and some at 25 per cent.

"After hearing all of the testimony in regard to the fair market value of other property in the neighborhood, the value at which it is assessed, and the fair market value and assessed value placed upon other like or similar property in the city, the court is of the opinion that the property in question (180 East High Street) should be assessed fifty (50) per cent of its fair market value of $70,000.00, as of July 1st., 1945, and should have

been assessed at $35,000.00; that 182 East High Street was of the fair market value of $16,000.00 and should have been assessed at $8,000.00 as of July 1st, 1945.''

The appellant makes the point that the pleadings do not support the evidence upon which the court rests the judgment. This is predicated upon the fact that the answer of the property owner in the circuit court does not allege any inequality of assessment. It is argued that there must be such an allegation before evidence may be heard. In the cases cited it appears that there were allegations of that kind. The answer consists of a traverse of the affirmative allegations of the city's statement of appeal as to the fair and reasonable valuations, and charges that the valuations made by the assessor and board of equalization were ''arbitrary, capricious, unreasonable, illegal, unauthorized and in direct violation of the statutes.'' It is further charged that ''said assessments are not uniform with those made upon like property.'' The method of obtaining a judicial review of assessments of property by a city is very simple. For cities other than those of the first class an appeal from the action of the board of equalization to the quarterly court is perfected by filing with its clerk a certified copy of the action of the board. The appeal from a judgment of that court to the circuit court and thence to the Court of Appeals is ''as in other civil cases.'' KRS 92.440. That procedure is to file a certified copy of the judgment and statement of costs with the circuit clerk and to execute a performance bond. Section 724, Civil Code of Practice. It would seem, therefore, that these pleadings were not necessary. But certainly the practice is more satisfactory than would be a strict observance of the simple procedure stipulated. The city cannot claim that it was misled or that there was such variance between pleading and proof as to require that the evidence be ignored. We find no merit in the contention.

The judgment is affirmed.