**REEVES et al. v. JEFFERSON
COUNTY et al.**

Court of Appeals of Kentucky.
Nov. 21, 1951.

Rehearing Denied Feb. 22, 1952.

A. E. Funk, Atty. Gen., Jo. M. Ferguson, Asst. Atty. Gen., for appellant.

Lucian L. Johnson, Johnson & Johnson, Lawrence G. Duncan, Co. Atty., all of Louisville, David Thornton, Versailles, for appellee.

Millard Cox, Louisville, amicus curiæ.

LATIMER, Justice.

Jefferson County and the Jefferson County Board of Education, suing on behalf of themselves and all other counties similarly situated, filed a petition in equity in the Franklin Circuit Court against the Kentucky Tax Commission, alleging in substance: (1) that the Kentucky Tax Commission had arbitrarily and capriciously fixed the assessment value on stored whiskey for ad valorem property taxes; (2) that the Commission erroneously equalized this assessment at 42%, setting a value of $42 per barrel, which was only a part of the real value; and (3) that the Commission, in its method and mode of computation in arriving at the assessed valuation, deprived them of their constitutional rights. Other taxing units in fourteen additional counties joined as parties plaintiff. The City of Midway was permitted to intervene.

The prayer in the petition requested the court to adjudge the assessment void and mandatorily to enjoin the members of the Commission to reassemble and "fix the sale value of the said whiskey and distilled spirits for tax purposes at the price same would bring at a fair voluntary sale."

The Commission demurred specially to the petition on the ground that plaintiffs had no right or legal capacity to maintain the action and that the trial court had no jurisdiction. The court overruled this special demurrer.

The Commission, after filing motion to strike certain allegations of the petition, demurred generally to the petition.

The court overruled both the general demurrer and the motion to strike. The Commission having declined to plead further, the court adjudged the assessment to be void and ordered the members of the Commission to reassemble and assess the property without equalization and to value the whiskey at the actual amount it would bring at voluntary sales as shown by the evidence contained in the record.

Appellants contend that their special demurrer should have been sustained because appellees are mere political subdivisions having no authority in the assessment of distilled spirits and the Commonwealth has expressly withheld from them any appeal

from or review of an assessment made by the Commission.

Appellants base their argument on KRS 131.125(1) which provides: "Unless otherwise specifically provided by law, no appeal from or review of any tax assessment, ruling, order or finding of the Department of Revenue or of the Kentucky Tax Commission shall be allowed except in the manner and subject to the conditions as provided in KRS 131.110 and 131.120."

KRS 131.110(2) refers to "Any taxpayer who has been assessed" and KRS 131.120 (1) refers to " * * * an aggrieved taxpayer".

■ KRS 131.125 clearly makes an appeal under KRS 131.110 and 131.120 an exclusive remedy insofar as the "aggrieved taxpayer" is concerned. This is not an action by an aggrieved taxpayer.

■ Under our law, the fiscal courts, not the taxpayers, are vested with the primary duty to institute all suits on behalf of the counties. KRS 67.080. Likewise, our statutes, KRS 160.160, 160.290, place upon the boards of education, not the taxpayers, the initial responsibility of maintaining legal actions on behalf of the school districts. Furthermore, this court refuses to permit a taxpayer to bring suit in a matter concerning public funds until he has first requested the authorized school board, county or other public body to institute such action and the official body has refused to comply. Commonwealth, by and through Barton v. Mauney, 1935, 258 Ky. 429, 80 S.W.2d 568, and cases cited therein.

The leading case on the right of appellees to maintain such an action is City of Louisville v. Martin, 1940, 284 Ky. 490, 144 S.W.2d 1034, 1036, which is closely analogous to the instant case. That action was instituted by the City of Louisville, Jefferson County and the Jefferson County Board of Education against the members of the Kentucky Tax Commission, because of their alleged arbitrary and capricious action in assessing stored whiskey. Many questions were raised by a special demurrer as shown by the following quotation from the court's opinion: "There is stubborn controversy concerning the right of appellants to maintain this character of action. On behalf of appellees it is argued in effect that the commonwealth is immune from suits unless the right of action has been conferred by the constitution or by legislative act pursuant thereto (Constitution, section 231); that appellants are mere agencies of the state with only such authority as has been granted by statute; that while this action is brought against appellees, it in fact and to all intents and purposes is an action against the state; that under the statutes the assessment is final with no right of appeal granted; that authority for such action is not conferred by either the constitution or statutes. Appellants, of course, are out of agreement with appellees and make issue on every question argued; and assert in substance that this is not an action against the state nor an attempt by one of its subdivisions or agencies to control its functions, but an action to compel an official board of the state to perform a duty imposed upon it by law on behalf of the state as well as of appellants and which it has failed and refused to perform."

After consideration of the above contentions, this court concluded that the action could be maintained by the local taxing districts and held that the special demurrer to the petition should have been overruled.

■ On authority of the Martin case, we conclude that the lower court correctly overruled appellants' special demurrer. To hold otherwise would bring within the range of possibility a situation wherein the Tax Commission could arbitrarily set the assessment at such a ridiculously low amount as to defeat the very purpose of taxation, with no recourse on the part of those to be benefited by the tax.

Appellants next contend that even though Jefferson County had the power to maintain this action, the Commission's general demurrer should have been sustained, because the petition did not state a cause of action and further because the Commission

acted correctly in equalizing its assessment of distilled spirits.

Briefly, the salient facts alleged in the appellees' petition are: that the Tax Commission's valuation of $100, before equalization, and the resulting $42 assessment after equalization, were arbitrary, capricious and contrary to Kentucky law, in view of the per barrel fair voluntary sale values of $128.23 and $131.16, based on the affidavits and reports of distillers and whiskey brokers as to prices actually paid and received in whiskey purchases and sales.

KRS 132.140 requires the Kentucky Tax Commission to fix the value of distilled spirits for the purpose of taxation. KRS 132.150 requires the Commission to certify the value so fixed to the county clerks of the counties in which the spirits are located. These clerks in turn are required to certify the amount of the assessment to the proper collecting officer of the county, city or taxing district.

KRS 132.150 then provides that: "The spirits, in addition to the tax for state purposes, shall be taxed for county, school and city purposes at the prevailing rates of taxation on tangible personal property in the respective counties, school districts and cities in which the spirits are stored * *."

█ As said in the Martin case: "To start with, we have the presumption of a proper discharge of duty upon the part of appellees as state officials."

The facts and information on which the Commission based its order are in this record, filed as appellees' exhibits. The memorandum, prepared by Mr. Tanner of the Department of Revenue, shows that the so-called "whiskey owners'" and "whiskey brokers' actual sales and purchases values" were mere computations made in exploring several methods of estimating the average fair cash value of distilled spirits as of September 1, 1948; and that Mr. Tanner did not conclude that either of said figures represented the fair cash value of distilled spirits on that date. Mr. Tanner's memorandum shows that in 1948 there was a shortage of old whiskey, resulting from the cessation of production during the war;

that in those relatively few instances where such distillers sold old whiskey in bulk to the distributors, the sale contracts permitted the whiskey to be bottled under a well-established name of the selling distillers. Thus these sales did not represent the true price of the whiskey but reflected necessarily the value attributable to the established brand name. The report further shows that some distillers, in order to keep their brand names on the market, paid abnormally high prices for the relatively small quantity of old whiskey they purchased in bulk and that the fair trade strip price of $79.44 represented "what the distiller actually gets from his whiskey when bottled and marketed through ordinary mercantile channels" and that substantially all of it has been sold in that way and that the cost of production, plus carrying charges, amount to $62.50 per barrel. Mr. Tanner's memorandum was submitted to the Kentucky Tax Commission together with such data as Jefferson County et al. and the taxpayers submitted. The Commission considered all such data in connection with the mass of information within its own knowledge as the chief tax assessing agency of the Commonwealth and entered its final assessment order on April 13, 1949.

The Commission's order read: "The Kentucky Tax Commission, in reconsidering the tentative assessment made on October 1, 1948, has considered all of the relevant and competent information supplied by Jefferson County, Jefferson County Board of Education, the Kentucky Distillers Association, Whiskey Brokers of America, Inc., and the taxpayers, and all of the facts and information independently gathered and within its own knowledge, and is of the opinion and finds that the fair cash value of distilled spirits in bonded warehouses as of September 1, 1948, equalized to the average underassessment of similar property, * * *."

█ The lower court held that whiskey was "quasi property" and as such was not entitled to equalization with other property. This appears to be clearly erroneous. In fact, distilled spirits are expressly classi-

fied as personal property under the Kentucky Statutes. KRS 132.010(5) provides in part: " 'Personal property' includes every species and character of property, tangible and intangible, other than real property." KRS 132.185, Acts 1950, Chapter 132, provides: " * * * Delinquent taxes on such distilled spirits shall be subject to the same penalties as provided by law for other tangible personal property * * *."

Since distilled spirits are property within the meaning of Section 172 of our Constitution, which subjects "all property" to taxation, it necessarily follows that distilled spirits are "property" within the meaning of the provisions of the Constitution, which mandatorily requires uniformity in the assessment of property for ad valorem taxes.

The U. S. Supreme Court held in Dawson, Att'y Gen'l of the State of Kentucky v. Kentucky Distilleries and Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638, that distilled spirits are property within the meaning of Section 171 of the Kentucky Constitution requiring uniformity.

 The language of the court in City of Louisville v. Martin, supra [284 Ky. 490, 144 S.W.2d 1037], is most pertinent:

" * * * While the constitution, section 172, and various statutes, like the section referred to, require that all property subject to taxation shall be assessed at its fair cash value estimated at the price it would bring at a fair voluntary sale, assessing authorities have, since the adoption of the constitution and enactment of such statutes, consistently disregarded their strict letter, and treated them as only requiring uniformity; and have attempted to adopt a general level of proportionate values in assessing various classes of property. This court has held in such circumstances that all taxpayers should be treated alike and that there should be no discrimination between different classes of property. McCracken Fiscal Court v. McFadden, 275 Ky. 819, 122 S.W.2d 761; Eminence Distillery Co. v. Henry County Board of Supervisors, 178 Ky. 811, 200 S.W. 347; Prestonsburg Water Company v.

Board of Supervisors, 279 Ky. 551, 131 S.W.2d 451.

" * * * where, through neglect, bad faith, or otherwise, property subject to taxation has escaped assessment, mandamus may issue to compel the officials to list and assess such property. But to the extent that the officers have a discretion in the matter, such discretion will not, unless abused, be controlled by mandamus. The bad faith of the officer must clearly appear; there must be such a flagrant abuse of discretion as to be irreconcilable with an honest judgment, for courts are averse to revising the decision of tax boards and officers on mere general assertions of fraud or error in the assessment." 34 Am.Jur., Mandamus, Section 215.

"As a general proposition, * * * administrative determinations of fact, or determinations made in the proper exercise of discretionary or administrative, legislative, executive, or judicial functions, or of exclusive or primary jurisdiction, vested by the legislature in administrative authorities, are conclusive upon the courts. Particularly in tax cases no relief is available where there was a mere error of judgment. The court has nothing to do with the wisdom or expediency of the measures adopted by an administrative agency to which the formulation and execution of state policy has been intrusted, and must not substitute its judgment or notions of expediency and fairness or wisdom for those which have guided such agency, even where the proof is convincing that a different result would have been better. These are matters left by the legislature to the administrative 'tribunal appointed by law and informed by experience.' " 42 Am.Jur., Public Administrative Law, Section 209.

 Courts have uniformly held that administrative agencies cannot be given unbridled power. This position has an obvious underlying reason and purpose.

 However, we must harmonize the acts of the Commission with the general legislative tax plan. The order as entered by the Commission was supported by essential findings and in keeping with constitutional and legislative requirements.

It follows that the court should have sustained the general demurrer.

The judgment is reversed with directions to enter an order upholding the action of the Kentucky Tax Commission.