James E. **LUCKETT**, Commissioner of Revenue, Commonwealth of Kentucky, et al.,
Appellant,

v.

**TENNESSEE GAS TRANSMISSION COMPANY, Appellee.**

Court of Appeals of Kentucky.

Feb. 5, 1960.

William S. Riley, Virginia R. Collins, Dept. of Revenue, Frankfort, for appellant.

Louis Cox, John Hopkins, Hazelrigg & Cox, Frankfort, John R. Cook, Jr., Lexington, for appellee.

William G. Craig, Byron, Sandidge Holbrook & Craig, Owensboro, for amicus curiae, Texas Gas Transmission Co.

MOREMEN, Judge.

Appellee, Tennessee Gas Transmission Company, is a foreign corporation which has qualified to do business in this state. It operates and maintains pipe lines and incidental machinery for the transmission of natural gas in interstate commerce. It owns property in about twenty-five counties.

KRS 136.120 created a franchise tax on public service corporations, and appellee is subject to that tax. Our inquiry concerns whether the method used by the Department of Revenue in the valuation of appellee's franchise was in accordance with the one prescribed by that statute.

The circuit court held that the Department of Revenue had failed to use the statutory method in evaluating appellee's properties, and ordered the Kentucky Tax Commission to re-assemble and assess the properties in accordance with the statute and the judgment entered, and decreed that the tangible properties of the company must be assessed at no higher level of their fair cash value than are like and similar properties in the Commonwealth of Kentucky. Hence this appeal by the Commission and the Department of Revenue.

KRS. 136.160, the franchise valuation statute reads in part:

"The department shall fix the value of the capital stock in this state of foreign public service corporations by capitalizing the net income derived in this state, or shall fix the entire value of the capital stock of the corporation by some other method and then fix the value of the capital stock in this state by determining from the amount of gross receipts of the corporation the proportion which the gross receipts in this state, * * * bears to the entire gross receipts. The value of the capital stock in this state, less the assessed value of the tangible property * * * in this state, shall be the correct value of the corporate franchise of the corporation for taxation in this state."

At the outset we wish to point out that the expression, "capital stock" when used in franchise tax statutes has a particular meaning. Usually, and we suppose strictly speaking, the capital stock of a corporation is the money contributed by the corporators to the capital and represented by shares issued to subscribers. Burton v. Burton, 161 Cal.App.2d 572, 326 P.2d 855. It is evidence of rights in property. Southern Package Corporation v. State Tax Commission, 195 Miss. 864, 15 So.2d 436, 16 So.2d 856. The terms "capital" and "capital stock" are practically the equivalent of each other, but when considered as the basis for the imposition of a franchise tax, "capital stock" means, not the stock share, but the property of the corporation. People ex rel. Tetragon Co. v. Sohmer, 162 App. Div. 433, 147 N.Y.S. 611.

When the statute (KRS 136.160) requires that "the department shall fix the value of the capital stock in this state of

foreign public service corporations" it is speaking of all property of the corporation, including the intangible value gained by the use of it as a going concern under governmental license and this property necessarily includes tangible property. Its object is to reach the intangible enhancement of the physical properties resulting from the use of this property under special privilege by the government.

The statute (KRS 136.160) requires that four steps must be taken to determine franchise value:

1. Fix the value of all the capital stock of the company.

2. Fix the value of the capital stock in this state.

3. From the amount established under item 2, deduct the assessed value of the tangible property in this state.

4. Accept as the correct value of the franchise the amount that results.

■ The parties do not disagree as to the sequence of the various steps set forth in the statute, but they do diverge from this common beginning when determining the time the "equalization factor" should be applied. Since the subject of equalization is not even mentioned in the statute it requires some discussion.

Section 172 of the Constitution provides:

"All property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. * * *"

Nevertheless, the well-established custom in this state is to assess property (excluding intangible personal property) at less than its fair cash value. This usage has been recognized by this court and accepted by the other branches of government. Authority for such a rule may have originated in Section 174 of the Constitution which reads:

"All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this Constitution; and all corporate property shall pay the same rate of taxation paid by individual property. Nothing in this Constitution shall be construed to prevent the General Assembly from providing for taxation based on income, licenses or franchises,"

but however obscure its genesis, the fact remains that tax rates are never applied to the "fair cash value" of the tangible property, except perhaps by chance.

The acceptance of the practice of "equalization" was justified in City of Louisville v. Martin, Com'r of Revenue, 284 Ky. 490, 144 S.W.2d 1034, 1037, where it was reasoned:

"While the constitution, section 172, and various statutes, like the section referred to, require that all property subject to taxation shall be assessed at its fair cash value estimated at the price it would bring at a fair voluntary sale, assessing authorities have, since the adoption of the constitution and enactment of such statutes, consistently disregarded their strict letter, and treated them as only requiring uniformity; and have attempted to adopt a general level of proportionate values in assessing various classes of property. This court has held in such circumstances that all taxpayers should be treated alike and that there should be no discrimination between different classes of property."

It is difficult to understand why "equality" should not be reached at the top, i. e. "fair cash value" rather than at a percentage of that value, and why a flat deduction to all persons in a class gives equality. Between classes, yes! But in practical application, the "equalization factor" has been blanketed over an entire class. If the original assessment as to the fair cash value was initially wrong as to any person or persons,

the same blemish remains after a uniform deduction to all persons in the class, in the interest of equalization, has been made.

■ Nevertheless, the well-established custom has been approved on many occasions. In McCracken Fiscal Court v. McFadden, 275 Ky. 819, 122 S.W.2d 761, 764, it was said:

"Whenever the tax assessing authorities have systematically disregarded the imperious demands of the Constitution and statutes, that all property shall be assessed at its fair cash value, by adopting a general level of proportionate values, everybody must have been treated alike. When it was shown that the property involved in a case had not been assessed at that uniform level, this court has required an adjustment."

In this connection, the cases of City of Lexington v. Cooke, 309 Ky. 518, 218 S.W. 2d 58, and Reeves v. Jefferson County, Ky., 245 S.W.2d 606, are interesting.

The acceptance of this practice by courts results from the imperative duty to dispense justice in individual cases. The Constitution demanded equality in taxation. In the usual case it was shown that an individual's property had been assessed at or near the "fair cash value" while the rest of the property in that class belonging to other owners had been uniformly assessed at a flat percentage of the fair cash value. All the property owners were not before the court, hence it was necessary, in order to achieve equality for the taxpayer whose property had been appraised at full value, to reduce the assessment to the general level.

■ Many sessions of the legislature have been had since this practice became an established custom in this state and the tax laws have many times been changed or re-enacted without any attempt to abolish the usage. We think it is a matter of general knowledge now that tax rates are projected and established with full recognition that the rates will not be applied to the full fair cash value of the property.

When we return to the facts of the instant case, we find that the parties stipulated as to the fair cash value of the capital stock of the appellee company allocable to Kentucky. We are not advised as to what method was used in arriving at this valuation.

The Department of Revenue insists that it complied with KRS 136.160 and correctly applied the "equalization factor" when it used this formula:

1. It obtained the value of the capital stock allocable to Kentucky.

2. It reduced that capital stock value to equalize it at 55%.

3. It equalized the value of tangible property based on an equalization at 40% of depreciated reproduction costs new.

4. It deducted from the equalized value of the capital stock the equalized value of the company's tangible property.

5. It treated the result obtained as the equalized value of the franchise. No further equalization was made.

■ Appellees insist that the statute is concerned only with fixing value. That equalization has no part in establishing value, and is only a device used in achieving equality of taxation under the Constitution. We agree.

■ The trial court adjudged the following method to be correct:

1. Determine the value of the allocable capital stock.

2. Deduct therefrom the assessed or unequalized value of the company's tangible property.

3. Accept the result obtained as the value of the company's franchise subject to equalization at no higher level than other like or similar properties in the commonwealth.

Authority for the court's decision may be found in City of Louisville v. Howard, 306 Ky. 687, 208 S.W.2d 522, 525, wherein it was said:

"However, the city's petition further alleged that after the commission had determined the amount of this company's capital stock value, the commission had then equalized it, had thereafter deducted from such equalized capital stock value the assessed value of the company's tangible property in order to produce the difference as the company's franchise value. If this latter method was followed, as the city's petition alleges it was, then the commission did, we believe, pursue an erroneous method. Consequently, the appellant did, we think, state a legal cause of action in this latter respect. The law, KRS 136.160, says that the taxing authorities shall do two things in order to arrive at a tax value for a franchise. First, it says they must fix, with no detailed method prescribed, a capital stock value, with no defined meaning attached. Second, it says that they must then deduct from such predetermined capital stock value the assessed value, with no clear indication as to whether the assessed value means one equalized or unequalized, of all tangible property. These two operations produce a remainder, which is, according to KRS 136.160, the franchise value. But it is necessary, we believe, to keep in mind that the very bull's eye of this target is the franchise value itself, which is the specific thing to be shot at by all taxing and equalizing authorities. Before any equalizing takes place, the ultimate object to be equalized must itself be produced. Separate equalization of the component parts of the object to be equalized would appear to be erroneous and improper. In the instance of an automobile, the object to be equalized by taxing authorities would necessarily be the complete vehicle rather than its radia-tor and then its motor and then its wheels. Tax equalization is a subsequent process rather than a preliminary process. It works on the consolidated thing to be taxed, not on the parts of the thing to be taxed. The subject for taxation in the instant case was the franchise value, not its parts. Any equalization by the commission of any of the component parts of the franchise value was erroneous."

We believe the foregoing reasoning is correct and the judgment is therefore affirmed.

PALMORE, Judge (concurring).

KRS 136.160, construed literally, requires that the value of a franchise be reached by subtracting the *assessed value* of the tangible property from the 100% value ("fair cash value," cf. Kentucky Heating Co. v. City of Louisville, 174 Ky. 142, 192 S.W. 4) of the capital stock, the necessary result of which is to add to the value of the franchise the difference between the assessed value and the 100% value of the tangible property. To the extent, therefore, that the assessed value of the tangible property is less than its 100% value, the value of the franchise would be inflated beyond its actual 100% value, which is but an ultimate and indirect method of forcing an added assessment of the tangible property. Since this effect would be palpably discriminatory, the state has not followed the statute literally, but for many years has first "equalized" the value of the capital stock before subtracting the assessed value of the tangible property, a procedure which was uniformly recognized by the courts until 1947 (see Texas Co. v. Commonwealth, 303 Ky. 590, 198 S.W.2d 316), when this court in City of Louisville v. Howard, 306 Ky. 687, 208 S.W.2d 522, in effect removed the word "assessed" from the statute. If the percentages of equalization were the same (which, in the instant case, they are not), the final result of the process would be the same regardless of which way the formula is applied, and there would

be no controversy. But to the extent that the percentage at which the total capital stock value is equalized exceeds the percentage at which the tangible property is assessed the taxpayer is subjected to the same evil as if the capital stock were not equalized at all. The difference is in degree only. The final result is that a portion of its tangible property is being taxed as a part of its franchise. This being a form of double taxation on the tangible property, the taxpayer is deprived of the right to have his tangible property taxed uniformly as the tangible property of other taxpayers is taxed.

Though stated from a different approach, City of Louisville v. Howard, which we are urged to overrule in this case, actually resolves the dilemma in the simplest and best manner in which KRS 136.160 can be validly applied. It conforms with Const. § 172 in both letter and spirit, and this should redound to the advantage of the state in view of Kentucky Finance Co. v. McCord, Ky., 290 S.W.2d 481, because there is no necessity that the end result, the franchise value, be "equalized" at all.