## Wright v. Owens et al.

(Decided Dec. 2, 1938.)

CHARLES B. SPICER for appellant.

HIRAM H. OWENS and J. C. BAKER for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

B. P. Jones and Hiram Owens (hereinafter referred to as Jones & Owens) owned the land in fee from which the Harlan County Coal & Coke Company (hereinafter referred to as the corporation), was mining coal. The corporation encountered financial difficulty and on March 18, 1932, the Kentucky Insurance Company, a partnership, filed this action against it alleging the corporation was indebted to it in the sum of $714.98; that the corporation was largely indebted to numerous creditors; that it was insolvent and had abandoned its property; and asked that a receiver be appointed to take charge of the corporation's assets and that they be sold and the proceeds therefrom be distributed among the corporation's creditors according to law and equity.

March 21, 1932, the Judge of the Harlan Circuit Court appointed H. F. Whitehead receiver of the corporation and he executed bond in the sum of $5,000 and assumed his duties. The receiver, April 28, 1932, filed a petition asking the court to authorize him to sell and dispose of all the assets of the corporation to C. M. Wright for a sufficient sum to pay the corporation's debts, not exceeding $15,000, exclusive of a $5,000 mortgage held by Mrs. M. H. Mahan; the petition alleged there was filed with it a copy of the contract to be entered into with Wright, marked "A" for identification (but this contract cannot be found in the record). The court by an order entered April 9, 1932, directed the receiver to sign this contract and deliver it to Wright, the order reciting:

"And the receiver is authorized and directed to accept a bond with good surety from said C. M. Wright, made payable to the receiver, conditioned on the safe-keeping and forth-coming of all of defendant's (corporation's) property from said Wright if so ordered by the court."

Whitehead was ordered to continue as receiver for the purpose of carrying out this contract with Wright and making disposition of the corporation's assets.

Jones & Owens prepared a most unusual document. After styling the case, they designated the document, "Claim of B. P. Jones and Hiram H. Owens." They begin this paper by calling themselves "claimants" and end with this prayer:

"Wherefore your petitioners, B. P. Jones and Hiram Owens pray that they be made parties hereto and recover from defendant (sums aggregating $11,750.00); that the contract be declared null and void and your petitioners be adjudged to have a writ of possession for all property described in said lease contracts herein filed, and for all proper relief."

This document was filed in the office of the clerk of the Harlan Circuit Court, June 23, 1932, and a summons and one copy was issued thereon, but the record failed to show for whom this summons was issued or upon whom it was served.

Evidently, Jones & Owens treated the document as a petition and not as a proof of their claim, for on Feb. 15, 1934, they filed "an amended petition of Jones & Owens and petition to have C. M. Wright to be made party defendant," in which they asked to recover "not less than $2,000.00" from Wright for royalties; that the contract Wright made with the receiver should be canceled on account of Wright's breach thereof; that a copy of this contract between Wright and the receiver is filed with this pleading (but it cannot be found in the record); and finally they ask an injunction against Wright enjoining him "from entering upon, being upon and taking anything from said property." On April 28, 1934, Hon. H. R. Prewitt, Special Judge, granted a temporary injunction against Wright, enjoining him from removing coal and any property from the leasehold.

Although it is not so designated, on February 8, 1935, Wright filed what was evidently intended to be an answer to the hybrid pleading of Jones & Owens which has the attributes of a proof of claim as well as those of a petition. In this pleading Wright alleged he purchased from the receiver all equipment belonging to the corporation for which he was to pay the receiver 5 cents per ton on all coal mined by him until he had paid not exceeding $15,000 and that he had paid the receiver $7,000 thereon; that by oversight, fraud or mistake of

the draftsman, the contract omitted the provision of sale and he asked a reformation thereof.

March 16, 1937, Wright filed an answer to the "amended petition" of Jones & Owens to have him made party defendant, which answer is merely a traverse. Jones & Owens then on March 29, 1937, filed their second amended petition seeking to recover against Wright a minimum royalty of $10,500 per year and seeking to recover various rents and royalties for various years and seeking an injunction against Wright from mining further coal and seeking to have the contract between Wright and the receiver canceled on account of Wright's breach thereof and the property taken from the receiver and from Wright and restored to Jones & Owens.

On April 5, 1937, Wright filed his verified answer to this second amended petition, asking that it be treated as his affidavit on the hearing that day before Judge Gilbert of the motion for a temporary injunction. This pleading of Wright covers 12 pages and in it he attempts to traverse not only the allegations in the second amended petition of Jones & Owens but some of the allegations contained in previous pleadings filed by them. Judge Gilbert, April 5, 1937, granted an injunction against Wright prohibiting him from using the mine equipment. On April 5, 1937, Jones & Owens tendered and offered to file an amended petition bringing their account for royalty up to date in the sum of $1,072.80. On April 12, 1937, Jones & Owens filed a reply to the answer of Wright and while the caption does not so state, this pleading was in reply to the answer Wright filed April 5, 1937, to the second amended petition of Jones & Owens.

On April 12, 1937, Jones & Owens tendered and offered to file the contract they entered into with Wright July 1, 1932, wherein Jones & Owens refused to recognize Wright's or the receiver's authority to sell the equipment; and wherein Wright recognized the terms of the lease and supplemental lease contracts and bound himself to carry out same and to carry out the provisions of the agreement he made with the receiver; this contract further recites the payments Wright makes the receiver are not to be again required to be paid Jones & Owens by Wright.

Thus far, it is seen from the pleadings we have

taken the space and time to set out separately, the original issues between Jones & Owens and Wright, to-wit, the rentals and royalties they claimed Wright owed them, what was the contract between Wright and the receiver, and whether Wright had violated this contract, have not been changed. But May 5, 1937, Jones & Owens filed what they term "third amended and cross petition of Jones & Owens against C. M. Wright." This pleading sets out in the first paragraph Wright is indebted to them in the sum of $13,650 to be credited by whatever sums are paid them by the receiver; it contains a second paragraph alleging Wright by refusing to develop the mine in a workmanlike manner let water in; by removing supports from within the mine caused a "creep" to develop; by letting the mine fill up with refuse matter; by failing to keep in repair the buildings and mine equipment; all of which damaged their mine in the sum of $20,000. It is not necessary for us to determine whether this pleading alleges negligence on the part of Wright, as Jones & Owens may base this alleged damage to the mine on Wright breaching the contract he entered into with the receiver. At a glance it can be seen this pleading brings a new, separate and distinct issue into this litigation, to wit: Did Wright damage the mine of Jones & Owens by the manner in which he operated it?

Section 965-26, Kentucky Statutes, fixing the terms of the Circuit Court in Harlan County, shows the first three terms of that court convene on the first Monday of February, March and May, respectively, and each of these terms continue for 18 juridical days. This case did not stand for trial at the May term convening May 3, 1937, as Sec. 367a-5 of the Civil Code of Practice provides:

"Suits in equity shall stand for trial at the first term of court after the issue shall be completed or, by the provisions of this act, shall have been completed, thirty days before the commencement of the term."

By filing this third amended petition, May 5, 1937, Jones & Owens injected a new issue in the case and prevented the issues being completed 30 days before the May term convened—in fact, the issues were not completed at the time the case was submitted for judgment. Wright should have answered this third amended peti-

tion during the May term; and if necessary to make up the pleading, Jones & Owens should have filed their reply thereto during the May term, and the case would have stood for trial at the following term convening the third Monday in August.

The special commissioner made his final report May 19, 1937, and May 21, 1937, Wright filed his exceptions to this report objecting to the submission of the case, contending it did not stand for trial because the issues were not completed 30 days before the term and he alleged he filed a doctor's certificate stating Wright was physically unable to attend the trial. Jones & Owens filed the affidavits of Fred W. Smith and of J. Ray Rice that they met Wright in Louisville at the Seelbach Hotel May 16, 1937, talked some business with him and he appeared to be well. The court overruled the exceptions to the special commissioner's report, to which ruling Wright excepted, and on May 22, submitted the case for judgment on the matters contained in the report of the special commissioner. This was reversible error because the issues were not made up 30 days before the term convened and this case should not have been submitted over the objections of Wright. Strader v. Miller, 236 Ky. 637, 33 S. W. (2d) 668.

Sections 964b-1 to 965b-3, inclusive, of the Kentucky Statutes have no application to courts of continuous session, nor are such courts governed by Sec. 364 of the Civil Code of Practice. Sections 964b-1 to 964b-3 (an Act of the 1930 session) expressly except courts of continuous session from its provisions and expressly recite all terms of court shall be held as provided by law and the only effect of this Act of 1930 is to permit the judge of any circuit court, other than one of continuous session, upon reasonable notice, to enter any order, rule, judgment, or decree in vacation or term-time, that does not require a trial by jury. Northern Kentucky Transportation Company v. City of Bellevue, 215 Ky. 514, 285 S. W. 241; Estes v. Woodford, 246 Ky. 485, 55 S. W. (2d) 396. As is pointed out in the Estes Case "It neither abrogates, alters, changes, modifies, nor supplants sections 367a-1 to 367a-11, inclusive, of the Civil Code of Practice, nor any other section thereof, or any section of the statutes, controlling a circuit court in regular term, or special term under section 971-13. The rules of practice and procedure prescribed by these sections of the Code must be adhered to and followed by the parties

and the court when proceeding under section 964b-1.''
[page 397.]

The judgment in this case shows it was submitted prematurely because it provides if Jones & Owens except to any claims filed with the receiver, the same shall be referred to the Chancellor, to determine whether they shall, or shall not, be paid. As to the claim of Jones & Owens for damages done their mine, the judgment recites:

"In the matter of damages sought by Jones & Owens against C. M. Wright and the issues with respect thereto not being made the case is continued and an issue out of chancery is found to be necessary for the trial of the question of damages set out in said plea and that branch of the case is continued."

The judgment also contains this:

"As to money for coal shipped by the said Wright subsequent to Feb. 11, 1937, set up by Jones & Owens, the proof appears to be incomplete and the case is left open for determination and further judgment with respect to any coal, if any, shown to have been shipped by him not included in the L. & N. Railroad Company's reports to the receiver up to February 11, 1937."

This litigation started more than 6 years ago and numerous pleadings were filed to meet various situations and changes in conditions and many of these pleadings have no direct connections with the issues now being litigated. The record contains more than 300 pages and is made up mostly of pleadings, exhibits and orders of the court, there being not more than 50 pages of evidence, and but few of these pleadings, exhibits and orders have any bearing on the issues now existing between these litigants. We suggest the attorneys could greatly simplify this action, making it much easier for the Chancellor, and this court in the event of another appeal, by Jones & Owens filing an amended, or substituted, pleading setting out succinctly and with directness all their claims against Wright. He should file his answer thereto confining it strictly to the averments to be filed by Jones & Owens, setting up any new matter he thinks necessary to properly present his side of the case, and the parties could reach the issues in comparatively few pages of pleadings. This procedure would make it

unnecessary for the Chancellor to wade through 350 pages of record having little, if any, direct bearing on the issues involved. By all means, the contract between Whitehead, the receiver, and Wright should actually be made a part of the record and not be merely referred to. One judgment fully adjudicating all issues between the parties should be entered so in the event of another appeal, the entire case may be disposed of by this court.

We are reversing the judgment because the case was submitted over Wright's objection, when under Sec. 367a-5 of the Civil Code of Practice the issues had not been completed 30 days before the commencement of the court at which the judgment was rendered, and because under this premature submission for judgment, Wright was not given an opportunity to present his side of the controversy. Therefore, we expressly reserve our decision on all other questions presented in the record.

The judgment is reversed for proceedings consistent with this opinion.

Whole Court sitting.