# Texas Co. v. Commonwealth et al.

December 20, 1946.

Percy N. Booth and Jouett & Metcalf for appellant.

John & Johnson, Henry M. Johnson and Smith & Leary for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming in part, reversing in part.

This action was instituted in the Estill County Court in 1941 under KS 4260-1 as amended in 1937 (now KRS 132.330 and 132.340) to assess as omitted property the franchise of the Texas Company's pipe line in the counties of Estill, Lee and Powell for the years 1936-1940, inclusive. The county court held the franchise was not subject to taxation on the theory, as stated in briefs, that KS 4077 (now KRS 136.120) does not apply as the pipe line was used only to transport oil owned by the Company.

The Commonwealth appealed to the Estill Circuit Court and after hearing proof the chancellor found that the franchise was taxable and he fixed the value of it, and apportioned the amount of the franchise among the three counties according to the number of miles of pipe line there was in each county. The Company appeals from the judgment of the circuit court.

Three propositions are presented on this appeal. First, the pipe line served only the Company's refinery and carried no oil for others, therefore it is not a public service line and is not subject to a franchise tax under KS 4077 (now KRS 136.120): Second, the value of the franchise was improperly calculated on a net income which was grossly overstated: Third, the value placed on the franchise by the circuit court did not take into consideration that the pipe line is in a rapidly declining field, therefore the franchise was assessed at an excessive value.

Among the companies enumerated under KS 4077 as amended in 1938, Baldwin's 1939 Supplement to Carroll's Kentucky Statute, (now KRS 136.120) as being subject to a franchise tax there appears "pipe line company, and every other like company or business performing any public service." This section further provides, "The Department of Revenue shall have sole power to value and assess all of the property, including the franchise, of every corporation, company, association, partnership, or person performing any public service, including those enumerated above and all others to whom this section may apply * * *. Provided, however, that in the case of a taxpayer whose business is predominately nonfranchise and the franchise or public service business in which he is engaged is merely incidental to his

principal business, the Department shall in the exercise of its judgment and discretion determine, from evidence which it may have or obtain, what portion of the capital and property is devoted to the public service business subject to assessment by the department under this section * * *.''

It is vigorously argued by the Company that as every barrel of oil it transported through this line belonged to the Company before entering the line it was not a pipe line within the meaning of the statute, and the line was performing no public service and the Company was not subject to a franchise tax thereon. There are two answers to this argument.

First, KS 3766b-1b, an Act of 1920 (now KRS 278.-470) provides that every company receiving, transporting or delivering a supply of oil or natural gas for public consumption is declared to be a common carrier. And KS 3766b-1 (now KRS 278.500) gives to all corporations, organized for maintaining or operating oil or gas wells, or pipe lines for transporting or delivering oil or gas, the power to condemn lands and materials, and such are declared by this section to be a public use. Therefore, these statutes make this pipe line a common carrier and expressly impress on it a public use.

Second, in an unbroken line of decisions construing sec. 4077 (now 136.120) this court has held that a Company transporting its own goods in tank cars owned by it, or in pipe lines it owns and operates, is liable for a franchise tax on such transportation facilities. Louisville Tank Line v. Com., 123 Ky. 81, 93 S. W. 635, 29 Ky. Law Rep. 257; James, Auditor v. Kentucky Refining Co., 132 Ky. 353, 113 S. W. 468; Stoll Oil Refining Co. v. State Tax Commission, 221 Ky. 29, 296 S. W. 351; State Tax Commission v. Petroleum Exploration, 253 Ky. 119, 68 S. W. 2d 777.

The Company cites a Texas case, Col-Tex Refining Co. v. Hart, Tex. Civ. App., 144 S. W. 2d 909, which it contends is directly in its favor in holding that a pipe line operated by a refining company, which line transports only the company's oil from its wells to its refinery, is not subject to a franchise tax. But the Texas Legislature exempts from franchise taxes pipe lines which are limited in their use to the wells and the refineries of the

owner; while the Kentucky Legislature expressly said that such pipe lines are engaged in public service and gave them the right of eminent domain, which makes such lines in this State subject to franchise taxes.

The Company insists that it never used the right of eminent domain and that as it is not a public service company, the Legislature had no authority to confer this extraordinary power upon it. But we have seen that by statute a pipe line is designated as a public service company. By conferring the right of eminent domain upon pipe line companies the statute gave them a special privilege not allowed by law to natural persons, and it is immaterial whether or not the Company exercised this extraordinary power given it. Martin v. Producers Pipe Line Co., 6 Cir., 113 F. 2d 817, 820.

In the instant case the record shows that the Texas Company purchased oil from the Ashland Oil & Refining Company and from the Petroleum Exploration Company at the posted price of $1.43 per barrel, plus 18c a barrel to Petroleum and 21c a barrel to Ashland, for the oil these two companies delivered to the Texas Company in their own pipe lines. The evidence does not show what these extra payments of 18c and 21c represented. Wakefield, Manager of the Texas Company, testified, "We pay the posted price plus transportation charges." However, Cloyd, Special Auditor of that Company, testified his company's contracts with Ashland and Petroleum do not specify that these charges are transportation charges, but he could not say just what such charges represented. The chancellor interspersed this remark during the trial, "It (the 18c and 21c) seems to be a premium"; yet in arriving at the value of the franchise on the plan of capitalizing the net income he considered 18.3c as a carrying, or transportation, charge paid to Ashland and to Petroleum for delivering oil in their respective pipe lines to the Texas Company's refinery, and applied this rate to the oil run through the Texas Company's line.

The record does not show any pipe line rates in the particular community where the Company maintains its line, but it does show that the Mountain State Gas Company of West Virginia charges 5c per barrel for oil run through its line. That company's line is located approxi-

mately 100 miles from the Texas Company's refinery at Pryse, Kentucky, and that it transports oil about the same distance that the Ashland and Petroleum companies transported it to the Texas Company's refinery. We do not feel justified from this record in accepting 18.3c as the usual or customary carrying charge of pipe lines similar to that of the Texas Company, nor do we feel justified in accepting the one isolated instance of the Mountain State Gas Company's charge of 5c as fixing a customary and fair rate. The value of the franchise of the Texas Company's pipe line was determined by the lower court by capitalizing its net earnings, which is an approved method as we will subsequently see, and the net earnings are largely dependent upon what is the customary and fair charge per barrel of oil run through it. The trial court should have had sufficient evidence before it to accurately determine what that rate is. It should not be difficult for the parties to show what is the customary and fair rate for a pipe line similarly situated to the one here involved to charge for transporting oil under similar conditions.

Ordinarily, when we reverse a judgment in an equity case we direct what order the chancellor should enter. However, at times it is necessary to remand a case for more proof and to direct the chancellor to rehear it upon the additional evidence so that an accurate decision may be had. Preece v. Woolford, 200 Ky. 604, 255 S. W. 285; Ellis v. Darby Coal Co., 238 Ky. 692, 38 S. W. 2d 673; Williamson v. Maynard, 236 Ky. 33, 32 S. W. 2d 538; Wright v. Owens, 275 Ky. 692, 122 S. W. 2d 498. Here, we are reversing the judgment with directions that further proof be taken which will enable the chancellor to determine the correct charge at which oil should be run through the Texas Company's pipe line so he can accurately fix its net earnings and capitalize same in arriving at the franchise value of the line.

The chancellor arrived at the franchise value of the pipe line by multiplying the number of barrels of oil run through it each year by the rate of 18.3c per barrel, which gave the gross revenue. From this he subtracted the total actual cost chargeable against revenue on income, also, the average annual depreciation on the line on account of the depletion of the field, which gave the net income. This net income he capitalized at 7%, and then

he equalized that figure at 80% (the figure at which the Tax Commission normally equalizes franchise taxes) and deducted therefrom the assessed value of the tangible assets and the sum which remained was fixed as the value of the franchise. This procedure is in conformity with KS 4080 (now KRS 136.160) and has been sanctioned many times by this court. A few of the cases are: Commonwealth v. Kottmyer, 183 Ky. 163, 208 S. W. 823; Bosworth v. Kentucky Highlands R. Co., 183 Ky. 749, 210 S. W. 671; Chesapeake & O. R. Co. v. Com., 190 Ky. 552, 228 S. W. 15; Com. v. Louisville Gas & Electric Co., 278 Ky. 466, 128 S. W. 2d 778, 784.

The Company complains that this method does not take into consideration the pipe line is in a rapidly declining field, which results in an excessive value being placed on the franchise, citing Cumberland Pipe Line Co. v. Lewis, D. C. Ky., 17 F. 2d 167. This position of the Company is not sound. It will be noted that the chancellor in arriving at the depreciation of the pipe line did consider the depletion of the field, as is shown in the above paragraph. Even had he not taken the depletion of the field into consideration in arriving at the depreciation of the pipe line, nevertheless the Company would not have been hurt. The pipe line's net income will rise or fall as the production of the field rises or falls. When the production is up for the year, the income is up and the value of the franchise rises for that year. While with low production the net income is proportionately low, which in turn reduces the value of the franchise for that year. Therefore, we doubt the soundness of the Lewis case wherein it condemns the capitalization of the net earnings of a pipe line as a method of arriving at the value of its franchise when the rate of depletion of the oil field is not taken into consideration.

So much of the judgment is affirmed as holds that the pipe line is subject to a franchise tax and which places a value on the franchise in accord with the method of the capitalization of the net income. But so much of the judgment as fixing the carrying charge of this pipe line at 18.3c per barrel is reversed and the case is remanded for further proof as to what is a fair and reasonable rate for the transportation of oil through this pipe line. After the chancellor has determined that rate

from the additional proof to be heard, he will then fix the value of the franchise using the capitalization method he applied on the first trial.

The judgment is affirmed in part and reversed in part.