**CITY OF BARDSTOWN, Kentucky,**
**Appellant,**

**v.**

**LOUISVILLE GAS AND ELECTRIC COM-**
**PANY, a Corporation, and Public Service**
**Commission of Kentucky, Appellees.**

**The CITY OF BARDSTOWN, Kentucky,**
**a Municipal Corporation, Appellant,**

**v.**

**PUBLIC SERVICE COMMISSION of Ken-**
**tucky and Louisville Gas and Electric Com-**
**pany, a Corporation, Appellees.**

Court of Appeals of Kentucky.

Nov. 6, 1964.

J. Smith Barlow, City Atty., Bardstown, Cornelius W. Grafton, Grafton, Ferguson & Fleischer, Louisville, for appellant.

Clifford E. Smith, Frankfort, Peter, Heyburn & Marshall, Louisville, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, John B. Breckinridge, Atty. Gen.,

J. Gardner Ashcraft, Asst. Atty. Gen., Frankfort, for appellees.

CULLEN, Commissioner.

We have appeals by the City of Bardstown from a judgment of the Franklin Circuit Court in two related (and consolidated) actions seeking to set aside orders of the Public Service Commission. One of the actions, brought by Louisville Gas & Electric Company (hereinafter "L. G. & E."), sought to set aside an order granting Bardstown a conditioned certificate to construct a municipally-owned gas distribution system. The judgment held that the certificate had expired and become null and void by reason of failure to meet the condition upon which it was issued. The other action, brought by Bardstown, sought to set aside an order denying the application of Bardstown for an order compelling L. G. & E. to furnish a supply of natural gas to Bardstown, for its proposed distribution system, from a pipeline owned by L. G. & E. which runs close by Bardstown. The judgment upheld the order denying the application.

We shall consider first the case involving the application for a gas supply from the L. G. & E. pipeline, since our decision in that case will control the other case.

L. G. & E. is engaged primarily in the operation of a gas distribution system in Jefferson County. However, for a number of years it has owned and operated a pipeline running from east Kentucky to Louisville, and from that line it has sold gas at wholesale, under "wheeling" contracts, to another gas distribution company serving Shelbyville and Lawrenceburg.[1] It also has sold gas at wholesale from that line to a gas distribution company serving West Liberty. It further has a franchise to operate a gas distribution system in Hodgenville,

the gas for that system being supplied from a line connected with an underground gas storage field owned by L. G. & E.

In 1944 L. G. & E. applied for and obtained from the Public Service Commission a certificate to construct and operate an 8-inch gas transmission line running 65 miles from a connection with a major interstate pipeline of Tennessee Gas and Transmission Company at Calvary, Kentucky, to L. G. & E.'s mixing station in Louisville. The stated purpose was to obtain a needed additional supply of gas for its distribution system in Jefferson County. This line, known as the Calvary line, runs within two miles of Bardstown, and it is the line from which Bardstown sought a supply of gas. The line has been used solely to transport gas purchased by L. G. & E. from Tennessee Gas and Transmission Company from the Calvary connection point to the Louisville mixing station, except that after the application of Bardstown for a supply of gas from the line was denied by the Public Service Commission, L. G. & E. applied for and was granted a certificate to bid for a franchise to operate a gas distribution system in Mount Washington (a small city near the north end of the Calvary Line), and it thereafter obtained the franchise and has commenced supplying gas to that system from the Calvary Line.

Under KRS 278.470 any company "receiving, transporting or delivering a supply of * * * natural gas for public consumption" is declared to be a "common carrier," and the "receipt, transportation and delivery of natural gas into, through and from a pipeline operated by any such company" is declared to be a "public use." Under KRS 278.501 such a company has the power of eminent domain. The primary argument by Bardstown is that L. G. & E., in its status as a common carrier in the operation

1. The company serving Shelbyville and Lawrenceburg has an allocation of gas from Texas Gas Transmission Corporation. That allocation is assigned to L. G. & E. for delivery in Louisville for its system there. In turn, L. G. & E. furnishes an equivalent amount of gas, out of its East Kentucky pipeline, to Shelbyville and Lawrenceburg.

of the Calvary line, possessing and having exercised the power of eminent domain, is impressed by law with the obligation to sell gas at wholesale, from a tap-on connection at any point along its line, to any public distribution system having a need for the gas.

■ KRS 278.490 (which in the original legislative Act immediately followed the section now compiled as KRS 278.470) states it to be the duty of a pipeline company to "receive, for transporation and delivery, from such pipes as may be connected up with any main or tributary line, all * * * gas that may be held and stored or ready for delivery" (subject to qualifications as to carrying capacity). This statute imposes upon the company only the duty of a *carrier* or *transporter,* and not the duty of a *wholesaler* or *supplier.*

We do not find in the authorities cited by Bardstown any basis for the proposition that the *common law* imposes upon a common carrier the duty of a wholesaler or supplier. In Producers' Transportation Company v. Railroad Commission, 251 U.S. 228, 40 S.Ct. 131, 64 L.Ed. 239, the duty of the pipeline company was spoken of as a duty to "carry oil for all *producers* seeking its service" (our emphasis). In Pierce Oil Corporation v. Phoenix Refining Co., 259 U.S. 125, 42 S.Ct. 440, 66 L.Ed. 855, the holding was that the pipeline company was required to transport oil for a producer. Texas Co. v. Commonwealth, 303 Ky. 590, 198 S.W.2d 316, stands only for the proposition that a pipeline company carrying oil for public consumption is a common carrier; it does not purport to say that the company as such a carrier has any duty other than to carry or transport for any owner of oil who desires that service. In Smith v. Kentucky Utilities Company, 233 Ky. 68, 24 S.W.2d 928, the electric power line from which it was held that K.U. must render service was a *distribution* line and not a main transmission line. Bedford-Bowling Green Stone Company v. Oman,

115 Ky. 369, 73 S.W. 1038, involved the duty of a railroad to render a particular carrier service; it did not suggest that a railroad company could be compelled to become a supplier or wholesaler of goods.

■ Since neither the statute declaring a pipeline company to be a common carrier, nor the common law, imposes upon a pipeline company the duty of a supplier or wholesaler, such duty, if it exists, must be found in the statutes governing public utilities generally and providing for their regulation by the Public Service Commission, KRS 278.010 to 278.450.

We conceive that the duty of a public utility under the general public utility statutes is to render adequate, efficient and reasonable service, KRS 278.030, within the scope or area of service provided for in its certificate of convenience and necessity, KRS 278.020. It can be compelled to make any reasonable extension of its service facilities within its certificated scope or area of service, KRS 278.280(3).

■ The statutes clearly contemplate that the scope and area of authorized service by a public utility are to be defined and limited by the certificate of convenience and necessity. (Of course the service could not be so limited as to make it in effect a private rather than public service; for example, a certificate for a pipeline could not be so limited as to exclude any duty of carrying for the public.)

■ In the instant case the certificate issued to L. G. & E. for the Calvary line authorizes only the construction and operation of a line from the connection with Tennessee Gas and Transmission line at Calvary to the "existing mixing station" of L. G. & E. in Louisville. We are of the opinion that the limited terms of the certificate do not and could not relieve L. G. & E. of the duty of transporting gas over the line from Calvary to Louisville (and perhaps even to intervening points) for a producer or owner of gas tendering it at Cal-

vary for transportation. But certainly the certificate does, and validly can, limit the service to carrying or transporting. It is our opinion that under the certificate L. G. & E. has neither the authority nor the duty to wholesale gas owned by it at points along the line. Since that kind of service is wholly beyond the scope of its certificate the Public Service Commission has no power to order the service.

Bardstown argues, however, that since L. G. & E. has undertaken to supply gas from the Calvary line to its franchised distribution system in Mount Washington it has held itself out to supply gas at wholesale from the line and thus has brought that kind of service within the scope of its service obligations. There are two answers to that argument. First, L. G. & E. obtained an additional *certificate* to operate the distribution system in Mount Washington, and it may be considered that such certificate expanded its original pipeline certificate to that limited extent. Second, if it be considered that the original pipeline certificate was not so expanded, then L. G. & E. simply is acting illegally in supplying gas from the Calvary line to the Mount Washington distribution system, and such illegal action cannot furnish the basis for extending its authority and duties under the pipeline certificate.

Bardstown makes the further argument that since L. G. & E. wholesales gas, under "wheeling" contracts, from its East Kentucky pipeline to a distribution company serving Shelbyville and Lawrenceburg, L. G. & E. should be compelled to enter into a similar contract with Bardstown. (This proposition is suggested by Bardstown as an alternative to L. G. & E.'s being required to render straight out service from the Calvary line.) Under such a contract Bardstown would obtain through the Federal Power Commission an allocation of gas from Texas Gas Transmission Corporation, which has a pipeline running through northern Kentucky from which L. G. & E. obtains some of its gas supply. This allocation would be assigned to L. G. & E., and

the latter then would furnish an equivalent amount to Bardstown from the Calvary line. The object would be to furnish L. G. & E. at Louisville, through Texas Gas Transmission Corporation, a supply of gas to offset the amount taken from the Calvary line at Bardstown. It is argued that since L. G. & E. holds itself out as furnishing such a service from its East Kentucky line, it can be compelled to furnish the same kind of service from the Calvary line.

We think the answer to this argument is that whatever service L. G. & E. was or is authorized to render from its East Kentucky line depends upon the certificate of convenience and necessity under which that line was constructed and is operated. For all that is shown in this record the certificate for that line originally may have authorized such service or may have been extended by Public Service Commission approval of the service contracts. What was done with respect to service from that line is of no significance here, because L. G. & E.'s authority and duties in respect to the Calvary line depend upon the certificate for that line.

■ The view we have taken, in attaching controlling importance to the certificate, is we think consistent with an orderly and efficiently operable system of public utility regulation. Unless the scope or area of permissible (and compellable) service is confined by certificate the door is opened to endless controversy over service authority and obligation. Subject to the qualification hereinafter stated, our view also is consistent with the proposition supported by a number of authorities that the scope or area of service obligation of a public utility is limited to the extent of its profession, holding out or dedication of service. See State ex rel. Ozark Power & Water Co. v. Public Service Commission, 287 Mo. 522, 229 S.W. 782; California Water & Telephone Co. v. Public Utilities Commission, 51 Cal.2d 478, 334 P.2d 887; 43 Am.Jur., Public Utilities and Services, Sec. 22, pp. 586–588. The qualification is that under

our view the scope or area of profession, holding out or dedication is fixed, not by what the utility actually chooses to do, but by the terms of the certificate of convenience and necessity.

It is our conclusion that the Public Service Commission had no authority to compel L. G. & E. to supply gas to Bardstown from the Calvary line, either directly or under a "wheeling" contract.

As concerns the judgment holding that Bardstown's certificate had expired by its own terms, we think the ultimate holding is correct although we do not agree with the reason given by the trial court. The certificate was conditioned upon Bardstown's obtaining from the *Federal Power Commission* an order directing L. G. & E. to supply gas from the Calvary line. At the time the certificate was issued the Federal Power Commission had jurisdiction over the Calvary line. However, through proceedings initiated by L. G. & E. under the "Hinshaw Amendment" to the Federal Natural Gas Act jurisdiction of the Calvary line was returned to the Kentucky Public Service Commission. Bardstown then filed the application with the Public Service Commission which we hereinbefore have discussed. Bardstown's pending application before the Federal Power Commission, for an allocation from the Calvary line, accordingly was dismissed. The circuit judge construed the certificate as being strictly conditioned upon a Federal Power Commission allocation, and therefore he held that the dismissal by the Federal Power Commission terminated the certificate. We think the certificate reasonably should have been construed as being conditioned simply upon the obtaining of an allocation from whatever regulatory body had the power to make it, and therefore the certificate would have continued in force had Bardstown been able to obtain an allocation from the Public Service Commission. However, since Bardstown has not been able to obtain that allocation the certificate now has expired.

The judgment is affirmed.