RENDERED:  APRIL 4, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1401-MR

MADISON COUNTY UTILITIES
DISTRICT                                                                 APPELLANT


                        APPEAL FROM MADISON CIRCUIT COURT
v.                      HONORABLE DAVID M. WARD, JUDGE
                        ACTION NO. 23-CI-00395


CITY OF RICHMOND; A & R
CONTRACTORS, LLC; AND
RICHMOND UTILITIES                                                       APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, A. JONES, AND TAYLOR, JUDGES.

CALDWELL, JUDGE:  Madison County Utilities District appeals from the grant

of a summary judgment in a water service rights dispute.  We reverse and remand

for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

This case arose from a dispute about water service to a Madison County property ("the Property") recently annexed to the City of Richmond. The Property consists of about 118 acres of previously undeveloped land. The Property has been located within the boundaries of the Madison County Utilities District ("MCUD") or its predecessor since about 1968. A four-inch MCUD water main was placed adjacent to the Property about 50 years ago. Two MCUD water lines also run along two sides adjacent to the Property. However, MCUD admits it has not actually delivered water to any customer or consumer located on the interior of the Property.

In 2005, the City of Richmond ("the City") acquired a 1,940-foot easement along the southern portion of the Property to construct underground water lines for Richmond Utilities. Sometime thereafter, Richmond Utilities installed a 12-inch water line extending 1,900 linear feet beneath the Property and used the connection to provide improved wholesale water service to MCUD. After the easement was acquired, a MCUD water meter was installed on the Property to measure how much water was sold to MCUD by Richmond Utilities.

Sometime prior to 2007, disputes arose between the City and MCUD about providing water service to areas of Madison County. According to MCUD, the City sought to serve areas within MCUD's territory and to extend the City's

water distribution system to real estate developments outside city limits, often resulting in litigation.

In 2007, Madison County and MCUD entered into a Contract for Service and Sale of Water with Richmond Utilities (an agency of the City). The contract contained provisions about the City's sale of water to MCUD, volume limits, and territories. The contract included provisions setting forth the terms of the City's purchase of the right to serve water to certain specifically identified properties from MCUD. MCUD also released all claims and rights to serve territories acquired by the City under certain specified prior agreements. Furthermore, the parties agreed "to negotiate in good faith with regard to all other territories."

Also in 2007, the City adopted Ordinance 07-05. Ordinance 07-05 required that before any land was annexed to the City, the land had to be within the service territory of Richmond Water, Gas and Sewerage Works for both water and sewer. The Ordinance further required that the landowner must: "take such steps, including the payment of any and all fees, charges and expenses as may be required to release the land from the service territory of any other jurisdiction and to transfer the land to the service territory of Richmond Water, Gas and Sewerage Works."

In February 2023, the City annexed the Property at the request of the Property's then-owner, New Idea Construction and Homes, LLC ("New Idea"). MCUD asserts New Idea was aware the Property was located within MCUD's territory since New Idea had inquired about MCUD's ability to serve the Property. MCUD states it provided New Idea with a hydraulic study showing its ability to serve the Property with MCUD's existing facilities.

MCUD asserts that it had a legal duty to provide the Property with water service because the Property was within MCUD's boundaries, and that New Idea failed to obtain a release of the Property from MCUD's territory. MCUD also points to the ordinance allowing the annexation of the Property being silent about whether New Idea obtained a release from MCUD. It claims there is no evidence the City took affirmative steps to ascertain that a release was secured from MCUD before annexing the Property. However, MCUD admits it did not contest annexation of the Property despite the Madison County Judge Executive's receiving notice of the proposed annexation.

After the ordinance to annex the Property was approved, A & R Contractors, LLC ("A & R") acquired the Property. In June 2023, MCUD inquired about negotiations for a transfer of rights to serve the Property, as required by the 2007 contract in its view. A & R signed an agreement to indemnify the City and Richmond Utilities for any litigation resulting from the water service dispute. A &

R subsequently began installing water infrastructure for the City and Richmond Utilities with the intention that the Property receive water and sewer service from Richmond Utilities.

In July 2023, MCUD filed a declaratory judgment action in Madison Circuit Court ("the trial court"). The City, Richmond Utilities, and A & R were named as Defendants.[1] MCUD requested that the trial court declare the Property to be within MCUD's territory. MCUD later amended the complaint to include a breach of contract claim against the City and Richmond Utilities for failure to negotiate in good faith about service rights to the Property. MCUD also filed a motion for a temporary injunction preventing the installation of City water lines in MCUD's territory.

A & R filed a motion for summary judgment, which the City and Richmond Utilities joined. The Defendants argued that Richmond Utilities had the right to serve the Property because MCUD never installed a water meter or provided service to the Property, and because Richmond Utilities had a water main at least as close to the Property as MCUD's water main.

The trial court entered an Order Denying Motion for Temporary Injunction and Granting Motion for Summary Judgment ("the Order"). It rejected

---

[1] The City and Richmond Utilities filed a joint answer along with a crossclaim against A & R for indemnification.

MCUD's argument that it had the dominant right to serve the Property. It also determined the agreement to negotiate about other territories was unenforceable.

MCUD filed a timely appeal. Further facts will be provided as necessary in our analysis.

## ANALYSIS

MCUD argues the trial court misconstrued KRS[2] 96.538(2) and KRS 96.150(1). It also contends the trial court erred by disregarding the contractual provisions to negotiate concerning other territories in good faith and further erred in granting summary judgment despite the existence of factual questions.

### Standard of Review

In reviewing the trial court's grant of summary judgment, we must determine "whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Powers v. Kentucky Farm Bureau Mutual Insurance Company*, 694 S.W.3d 361, 374 (Ky. 2024). In so doing, we keep in mind that the trial court "must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor." *Id.* Since summary judgment does not entail the trial court's making findings of facts but simply determining whether genuine issues of material fact exist based on the record, appellate courts do not

---

[2] Kentucky Revised Statutes.

defer to "the trial court's assessment of the record or its legal conclusions." *Id.* In other words, we review a trial court's grant of summary judgment *de novo* – meaning without any deference. *Ashland Hospital Corporation v. Darwin Select Insurance Co.*, 664 S.W.3d 509, 516 (Ky. 2022).

Furthermore, questions of statutory interpretation are reviewed *de novo* on appeal. *Dolt, Thompson, Shepherd & Conway, P.S.C. v. Commonwealth ex rel. Landrum*, 607 S.W.3d 683, 687 (Ky. 2020). In sum: "It is through the lens of this *de novo* standard of review that we examine this case." *Id.*[3]

---

[3] We review the trial court's grant of summary judgment *de novo* because this case primarily involves statutory interpretation, because the Appellees have not claimed that the issues raised on appeal were not properly preserved for appeal, and because we are satisfied that the issues raised on appeal were also raised to the trial court based on our review of the written record. *See generally Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009). However, the appellant brief fails to comply with the requirement in our Rules of Appellate Procedure ("RAP") that an appellant brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." RAP 32(A)(4).

Failure to comply with this preservation statement requirement creates a risk that an appellate court will regard an issue as unpreserved and accordingly review solely for palpable error resulting in manifest injustice or decline to review the unpreserved issue at all. *See generally Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021); *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012); Kentucky Rules of Civil Procedure ("CR") 61.02. Though *Ford* and *Oakley* predate the adoption of the Kentucky Rules of Appellate Procedure in 2023, they apply similar preservation statement requirements in former Kentucky Rules of Civil Procedure and their reasoning remains sound.

For future reference, we direct counsel's attention to the briefing checklists and basic appellate practice handbook available at our court website, https://www.kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx (last accessed Mar. 12, 2025).

Before we address the parties' arguments, we first summarize the trial court's key holdings in its order granting summary judgment.

**Summary of Trial Court's Holdings in Ruling on Summary Judgment Motion**

Citing KRS 81A.490, the trial court stated that if MCUD had the rights to service the Property, annexation did not eliminate those rights.

The trial court rejected the Appellees' argument that MCUD's failure to contest the annexation meant that MCUD could not proceed with its declaratory judgment action to resolve the dispute about water service rights. However, the trial court believed the act of annexation had a bearing on the applicability of statutes cited by the parties.

The trial court recognized in its order that the Property was indisputably within the defined service area of MCUD and that the parties agreed there was "no existing water service anywhere on the interior of the property." Next, the trial court considered MCUD's argument that it had a dominant right to serve the Property pursuant to KRS 96.538(2), which states:

> Any utility providing water, sewer or gas service in any area annexed, subsequent to July 15, 1980, by any municipality shall have the dominant right to continue to provide water, sewer or gas service in said area to consumers then being served and to new consumers located nearer to its facilities than to the facilities of any other utility as all those facilities were located immediately prior to annexation.

The trial court noted MCUD argued that KRS 96.538(2)'s language about a utility's providing service and customers' being served should be construed broadly to recognize a water utility's dominant right to serve an annexed area if the water utility "made service available" to a property even if the water utility had not begun providing water service to customers located on that property. But the trial court rejected this argument because KRS 96.538(2) does not contain language about service being "made available"—unlike a federal statute (7 U.S.C.[4] § 1926(b)) which was construed in a federal water service rights case cited by MCUD. *See North Shelby Water Co. v. Shelbyville Mun. Water and Sewer Com'n*, 803 F. Supp. 15 (E.D. Ky. 1992).

Based on what it construed as the plain language of KRS 96.538(2) – which refers to a utility's providing service and to customers' being served – the trial court concluded MCUD had no dominant right to serve the Property because MCUD had not provided water service to customers on the Property by delivering water to consumers. The trial court construed *providing water service* or *being served* in this context as meaning "the actual delivery of water to a consumer on the subject property and not simply making service available by geographically proximate water infrastructure." The trial court also held that a water utility's right to serve new customers located nearer to its facilities than to other utilities'

---

[4] United States Code.

facilities "is only triggered if there were consumers 'then being served' in the annexed land which there were not in this case."

Next, the trial court considered MCUD's alternative argument that the City and Richmond Utilities must be barred from providing water service to the Property based on KRS 96.150(1). KRS 96.150(1) states:

> Any city that owns or operates a water supply or sanitary sewer system may extend the system into, and furnish and sell water and provide sanitary sewers to any person within, any territory contiguous to the city, and may install within that territory necessary apparatus; provided, however, that the extension of a water supply or sanitary sewer system shall not enter into any territory served by an existing water supply or sanitary sewer district unless such district requests the extension of water or sewer services from a city. For these purposes the city or sanitation authority established by an interlocal agreement may condemn or otherwise acquire franchises, rights, and rights-of-way, as private corporations may do.

Again, the trial court construed *served* as meaning providing actual service (delivery of water to consumers), not just making service available.

Furthermore, noting KRS 96.150(1)'s reference to territory contiguous to a city, the trial court construed KRS 96.150(1) as only applying to a city's extension of water lines outside city limits. Because the Property had been annexed by the City, the trial court believed that KRS 96.150(1) did not apply and that therefore MCUD did not have to request that the City extend water services to the Property before the City extended water service there.

-10-

The trial court indicated it construed KRS 95.538 and KRS 96.150 together and according to their plain meaning in its view. Finding KRS 96.538 to be more specific and determining that KRS 96.538 applied to this case but KRS 96.150 did not, the trial court stated KRS 96.538 did not favor MCUD's claims.

In conclusion, the trial court stated MCUD had no dominant right to provide water service to the Property and no right to provide water service to future consumers within the Property's bounds. The trial court also stated the Defendants had no obligation to negotiate with MCUD about the provision of water services to customers located within the Property's bounds. The trial court declined to issue an injunction, which it concluded would be contrary to law, and it stated: "Recognizing the lack of material facts in dispute, this Court determines it impossible for the Plaintiff [MCUD] to prevail on its claims." So, the trial court granted the Defendants' motion for summary judgment, and it deemed its order final and appealable, noting its conclusions resolved all the parties' claims.

First, we address the parties' arguments about the trial court's holding that the contract provision calling for good-faith negotiations about other properties in the future was not enforceable.

**Trial Court Correctly Held Contract Provision Requiring Parties to Negotiate in Good Faith About Other Properties Was Not Enforceable**

The trial court stated that the Defendants had no duty to negotiate about water service to the Property. We construe this statement as essentially a

conclusion that the contract provision simply requiring good-faith negotiations about other properties was unenforceable.

MCUD argues the trial court erred in overlooking the contract's provision requiring MCUD and the City/Richmond Utilities to negotiate in good faith about other properties and failed to confront factual issues about whether the parties acted in good faith. In response, the Appellees argue the trial court correctly held that the City and Richmond Utilities were not obligated to negotiate with MCUD about providing service to the annexed property.

The Appellees assert that the contract provision calling for good faith negotiations about other properties is too indefinite to enforce because it leaves material terms open to future negotiations. *See Cinelli v. Ward*, 997 S.W.2d 474, 477 (Ky. App. 1998) ("Where an agreement leaves the resolution of material terms to future negotiations, the agreement is generally unenforceable for indefiniteness unless a standard is supplied from which the court can supplant the open terms should negotiations fail."). The Appellees also assert that a violation of the inherent covenant to act in good faith in every contract does not, by itself, establish an independent cause of action. *See J.S. v. Berla*, 456 S.W.3d 19, 25 (Ky. App. 2015) ("[W]hile Kentucky common law recognizes the obligation of good faith performance in every contract, violation of the good faith covenant alone does not give rise to an independent cause of action."). They suggest the contract provision

-12-

about future good-faith negotiations is simply an unenforceable, unduly vague agreement to agree. *See Walker v. Keith*, 382 S.W.2d 198, 201 (Ky. 1964) (stating: "An agreement to agree simply does not fix an enforceable obligation" in holding that renewal option provision in lease was not enforceable due to lack of definite terms about how the amount of rent would be determined on renewal).

MCUD did not respond to these assertions about the contract provision requiring good faith negotiation of other properties being unenforceable in its reply brief. Nor did the parties extensively discuss the enforceability of this provision at oral argument.

Especially given the lack of authority cited by MCUD to show the enforceability of the contract provision simply requiring good-faith negotiations about other properties, we discern no error in the trial court's conclusion that this contract provision was unenforceable. Moreover, this conclusion (well-supported by authority cited by Appellees) rendered any factual issues about negotiations or the lack thereof immaterial to resolving the parties' dispute about the water service rights to the Property. *See Key v. CitiMortgage, Inc.*, 686 S.W.3d 630, 637 (Ky. App. 2023) (citation omitted) ("Even assuming some factual disputes exist, not every factual dispute reflects a genuine issue of material fact sufficient to defeat a motion for summary judgment. Instead, the party opposing summary judgment must show there are 'genuine issues of material fact' – meaning that the factual

-13-

dispute actually affects whether the party moving for summary judgment is entitled to judgment in his/her favor.").

Thus, the trial court correctly resolved this contractual issue. Next, we address what the trial court perceived to be the key issue in this case – how to interpret key terms in KRS 96.538(2).

### Trial Court Erred in its Overly Narrow Interpretation of Terms *Providing Services* and *Being Served* in KRS 96.538(2)

The trial court stated there was no question that the Property was located within MCUD's defined service area, but it rejected any argument that being served meant being within such a defined service area. The trial court also noted the parties agreed there was no existing water service anywhere on the interior of the Property.

The trial court noted the use of the terms *providing service* and *served* in KRS 96.538(2). (It also noted the use of the term *served* in KRS 96.150, though it ultimately concluded KRS 96.150 did not apply to this case although KRS 96.538(2) did.)[5] In its analysis regarding both KRS 96.150 and KRS 96.538

---

[5] We decline to address whether the trial court was correct in determining that KRS 96.150 does not apply here because the Property had already been annexed. Regardless of whether KRS 96.150 applies here, we conclude the trial court erred in construing the terms *providing service* and *being served* too narrowly and in determining that Appellees were entitled to judgment in their favor based on MCUD having never previously delivered water to consumers on the interior of Property.

arguments, the trial court declared that *providing service* and *being served* plainly meant only the actual delivery of water to a consumer on the property at issue.[6]

Appellees argue the trial court correctly applied the plain meaning of *providing service* and *being served*. However, sometimes there is no one plain meaning of a term especially in complex, specific contexts such as water service disputes. For example, despite the trial court's dismissal of this possibility, some might use the term *served* to refer to a parcel within a water district's service territory – even without water being presently delivered to consumers on the parcel. This is especially true where the water district has installed infrastructure so that it can provide delivery of water to consumers located on the parcel upon request.

---

[6] The trial court correctly recognized that KRS 96.538(2) did not expressly refer to *making service available* – unlike a federal statute construed by a federal court in Kentucky in a case cited to it by MCUD. *See North Shelby*, 803 F. Supp. at 21, construing 7 U.S.C. § 1926(b).

Though we may consider federal precedent construing a federal statute as persuasive authority, such an opinion – particularly one construing a federal statute with different language – is not binding on us as we interpret Kentucky statutes. *See Harper v. University of Louisville*, 559 S.W.3d 796, 802 (Ky. 2018) (emphasis added) ("Because the federal and Kentucky whistleblower legislation is similar, we have routinely looked to the federal courts' interpretation of the corresponding federal whistleblower statute as *persuasive* authority."). *See also generally General Motors v. Woods*, 699 S.W.3d 874, 880 (Ky. App. 2024). So, we elect not to further address *North Shelby*, 803 F. Supp. 15 or *Lexington-South Elmore Water District v. City of Wilmore*, 93 F.3d 230 (6th Cir. 1996), also cited by the parties. Moreover, interpretations of Kentucky state law in these federal court opinions are not binding on Kentucky courts. *Embs v. Pepsi-Cola Bottling Co. of Lexington, Kentucky, Inc.*, 528 S.W.2d 703, 705 (Ky. 1975); *Kindred Nursing Centers Limited Partnership v. Cox*, 486 S.W.3d 892, 896 (Ky. App. 2015).

In other words, *being served* in this context could include not only a consumer's actual receipt of water delivery but also a consumer's being within a utility's service territory such that the utility has an obligation to extend the delivery of water upon the consumer's request. Likewise, *providing service* could also encompass a utility's installing infrastructure to be able to deliver water to consumers in its service territory upon request. In short, we cannot agree with the trial court that actual delivery of water to consumers is the only plain meaning of *being served* or *providing service* in this context.

After all, water districts such as MCUD have legal obligations to make reasonable extensions of service available upon request. KRS 278.280(3); *City of Bardstown v. Louisville Gas & Electric Co.*, 383 S.W.2d 918, 920 (Ky. 1964). Yet water districts cannot force occupants to request service, install a water meter and begin using water. So, if we accepted the trial court's view that only delivery of water to consumers counts as *providing service*, water districts would be placed in the untenable position of having to make investments to make water service available on request within their boundaries but receiving no protection under KRS 96.538(2) unless a customer opted to have a water meter installed and to begin receiving delivery of water – a circumstance outside a water district's control.

-16-

Also, statutes should be interpreted liberally to achieve their purposes. KRS 446.080(1). Moreover, KRS 96.538(2) and KRS 96.150(1) reflect an implicit intent to provide protection from municipal encroachment for water districts who have invested in infrastructure to make service available to rural customers.

Implicit intent to protect water utilities from municipal encroachment is especially evident given the substance of the amendments to KRS 96.538 and KRS 96.150 over the last few decades. For example, in 1960, the then-applicable version of KRS 96.150 granted a city "the unrestricted authority to furnish this service within five miles of its city limits." *See City of Cold Spring v. Campbell Cnty. Water Dist.*, 334 S.W.2d 269, 272 (Ky. 1960). But the current version of KRS 96.150 recognizes no such unrestricted authority for a city to furnish service within five miles of the city's limits. Similarly, KRS 96.538(2) now recognizes a water utility's dominant right to provide service in an area annexed by a city **after July 15, 1980**, under certain specified conditions. Thus, KRS 96.538(2) clearly indicates that no such dominant right of a water utility was recognized in areas annexed by cities prior to this date in 1980 but it is now. In sum, these statutes as amended over time indicate a legislative intent to provide some protection to water utilities when a city annexes property located within the water utilities' service area boundaries.

Therefore, we conclude it is unreasonable to narrowly construe KRS 96.538(2)'s protection for water districts providing service in an area as only referring to actual delivery of water to consumers in the area. Since *providing service* can entail installing infrastructure to facilitate delivery of water to customers upon request, the trial court erred in determining that the dominant right to serve future customers depended on a utility's having previously delivered water to other consumers on the property. Moreover, as MCUD's counsel articulated at oral argument, KRS 96.538(2) does not call for determining which utility has the dominant right to provide service[7] based on what consumers receive – but instead on what a utility provides.

Thus, properly applying a broader definition of *providing service* and construing the evidence in the light most favorable to MCUD for purposes of reviewing the summary judgment, MCUD was a utility providing water service in the annexed area at issue (the Property). MCUD had installed the infrastructure necessary for customers on the Property to receive water, which is all it could do. The fact that no customer had asked to receive water from MCUD is a circumstance wholly outside MCUD's control. That being so, MCUD thus has a dominant right under KRS 96.538(2) to continue providing water service in the

---

[7] MCUD's counsel conceded at oral argument that MCUD did not have an *exclusive* right to serve the Property based solely on the Property's being located within its service territory.

-18-

area (the Property) "to consumers then being served and to new consumers located nearer to its facilities than to the facilities of any other utility as all those facilities were located immediately prior to annexation."

Moreover, there is evidence to support MCUD having the dominant right to serve the Property despite Richmond Utilities' having on the Property 1,900 linear feet of a 12-inch water main with which it provides wholesale water service to MCUD (with a meter to keep track of how much water is sold to boot). And this is true despite Appellees' assertion that Richmond Utilities' facilities are located on the Property and are therefore nearer to any new consumers on the Property than MCUD's 4-inch water main – which is adjacent to the Property, and which does not provide any actual water service to the Property.

As stated in MCUD's reply brief, "MCUD is the only utility with facilities near the property with water lines on two sides of the property (Tates Creek Road and Goggins Lane)." In other words, there is evidence to support a conclusion that MCUD's facilities are better situated than those of Richmond Utilities to provide service to all areas of the Property. Moreover, counsel for Appellees acknowledged at oral argument that as a practical matter, Richmond Utilities would install additional infrastructure to serve customers on the Property instead of just tapping into its 12-inch water main on the Property – suggesting that water lines of a smaller diameter were more appropriate for tapping into to deliver

water to consumers even though it was possible to tap into the 12-inch water main. In contrast, MCUD's counsel noted that its 4-inch water lines located adjacent to the property could simply be tapped into to deliver water to customers on the Property.

To sum up, construing the evidence in the light most favorable to MCUD, we are not convinced that the Appellees have shown the non-existence of genuine issues of material fact or demonstrated that they are entitled to judgment in their favor, *see* CR 56.03, based on MCUD being unable to show a dominant right to serve any new consumers located nearer its facilities than those of Richmond Utilities.

Accordingly, we reverse the trial court's grant of summary judgment in favor of Appellees and remand the case to the trial court for further proceedings in conformity with this Opinion.

Further arguments in the parties' briefs have been determined to lack merit or relevancy to our resolving this appeal.

**CONCLUSION**

For the foregoing reasons, we REVERSE the judgment of the Madison Circuit Court and REMAND for further proceedings in conformity with this Opinion.

ALL CONCUR.

-20-

BRIEFS FOR APPELLANT:

Jud Patterson
Richmond, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Jud Patterson
Richmond, Kentucky

BRIEF FOR APPELLEES:

M. Todd Osterloh
Rebecca C. Price
Lexington, Kentucky

Kory Isaacs
Tyler Frazier
Greg Puckett
Richmond, Kentucky

ORAL ARGUMENT FOR
APPELLEES CITY OF RICHMOND
AND RICHMOND UTILITIES:

M. Todd Osterloh
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLEE A & R CONTRACTORS,
LLC:

Kory Isaacs
Richmond, Kentucky